482

HURLBUT v. KANTZLER et al.

HORACE A. HURLBUT

v.

FREDERICK M. KANTZLER et al.

*Filed at Ottawa September 27; 1884.*

1.   SPECIFIC PERFORMANCE—*to compel the assignment of a lease, where the consent of the lessor is a prerequisite to the right.*   A court of equity will not decree the specific performance of a contract to assign a lease for a term of years, where the lease requires the lessor to erect a building on the premises of not less value than a given sum, and prohibits its assignment except by the written consent of the lessor, where the lessor has failed to give such assent, and has put it out of his power to do so by accepting a surrender of the lease and the execution of a new one to other parties.

2.   SAME—*whether damages will be given in lieu of a specific performance—and whether a trust arises.*   Where the right of a lessee to assign the lease or transfer his leasehold interest is expressly made to depend upon the written consent of the lessor, a person who contracts with the lessee for such assignment with full knowledge of the inability of the latter to perform his agreement without such consent, and having no legal or equitable right to enforce such consent, will have no right, in a court of equity, to have damages in lieu of a specific performance, or to have other parties acquiring a new lease from the lessor, declared trustees holding for him.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

This is a bill for a specific performance, brought in the Superior Court of Cook county by Horace A. Hurlbut, against Frederick M. Kantzler, Daniel F. Crilly, Charles H. Blair, and the Board of Education of the City of Chicago.

On May 12, 1876, the board of education of the city of Chicago leased to said Kantzler the south eight feet of lot 23, and lots 24, 25, 26 and 27, in block 142, in school section addition to Chicago, for a term of nineteen years, from the 8th day of that month, for the yearly rent of $4100, payable quarterly, with certain provisions for the re-adjustment of the

rent every five years, Kantzler to pay all taxes and assessments levied on the premises. The lease contained a covenant that it should not be assigned without the consent of the board of education, to be evidenced by a certified copy of the proceedings of the board granting such consent, signed by the president and clerk of the board; and a further covenant, that Kantzler should, within sixteen months from the date of the lease, erect upon the leased premises a building to be worth not less than $40,000. Kantzler had not sufficient means himself, and did not succeed in borrowing the money necessary to erect such building. He continued to pay rent and taxes for over two years, without any return from the premises, sinking about $9000.

On August 8, 1878, Kantzler gave to Crilly & Blair an option, by a verbal agreement, to take an assignment of such lease for $5000, the offer to be held open till the first day of October, 1878. Eight days after, (August 16,) Kantzler gave to Hurlbut, the complainant, a written agreement, signed by Kantzler alone, to assign the same lease to him upon condition that Hurlbut should pay him $5500 on or before August 30, 1878,—if not so paid, the contract to be void. During the interview between Kantzler and Hurlbut, the latter prepared the following memorandum: "Memorandum of statement as basis of sale of lease by Kantzler to H. A. H., 104 on Dearborn by 120 on Monroe street; school lease to 1895; appraisal every five years; to 1880, rent $4100; no tax on land; F. M. Kantzler owns the lease; has plans and specifications for building; bids for the work; estimate $50,000 under present plans; K. has tenants who will lease for five years; amount $18,000 a year; will agree to furnish these tenants to me, provided I will furnish the building; will sell the lease, furnish plans, specifications and bids; premises free of any incumbrance; rents paid to August 8; for $5500." After Kantzler had left, Hurlbut, without Kantzler's knowledge, wrote under Kantzler's signature to the agreement, the

words, "Accepted as a contract.—H. A. Hurlbut." He also wrote on the paper signed by Kantzler, and under the words "accepted as a contract," etc., these words: "The additional conditions are on memorandum attached." On or about the 29th day of August, 1878, Kantzler gave a verbal assent to extend the time of payment to Hurlbut for three days longer.

On September 6, 1878, Crilly & Blair, having learned that Kantzler was negotiating with Hurlbut for the sale of the lease to him, went to Kantzler and insisted that he should carry out his contract with them. On the next day, Kantzler, having notified Hurlbut that his negotiation with him was at an end, complied with the request of Crilly & Blair, and reduced to writing the verbal agreement of August 8, as of that date, which agreement was then accepted, and the acceptance was signed by the parties, and filed for record on September 20, 1878. After this, Hurlbut offered to pay Kantzler the $5500 upon certain conditions, (about which there is some dispute,) one of which was, that tenants should be furnished paying $16,000 a year rent, and that the building could be erected for from $47,000 to $50,000. No unconditional tender or offer to pay was made by Hurlbut.

On September 24, 1878, Kantzler, in pursuance of his contract, assigned his lease to Crilly & Blair, and on the 26th of the same month, Crilly & Blair applied to the board of education for its consent to such assignment. This was prevented by an injunction, at the suit of Hurlbut. The bill alleged that Kantzler had informed complainant that he would not make the assignment of the lease, but intended to transfer the same to Crilly & Blair, and an injunction was prayed for, and issued on the 26th of September, 1878, restraining Crilly & Blair and Kantzler from procuring the consent of the board of education, and from executing an assignment of the lease to Crilly & Blair. Crilly & Blair and Kantzler answered, admitting that Kantzler, on the day named in the bill, was the owner of the leasehold in question, and that he

contracted with Crilly & Blair for the sale of the same to them, but taking issue on the other allegations of the bill; averring that whatever rights or equities Hurlbut may have had in the premises had been forfeited, and that they had no control over the board of education so as to compel them to assent to an assignment of said leasehold. The board of education interposed a demurrer, which was sustained, and the bill was afterwards dismissed as to them. On the 4th of October, 1878, the injunction was dissolved, and nothing was done in the case during the succeeding two years, and until November 15, 1880, when the complainant filed a supplemental bill against the appellees, averring that Kantzler had, since the commencement of the suit, surrendered his lease to the board of education, and cancelled all his right and interest therein, and that the board had accepted the surrender, and executed a new lease to Crilly & Blair, for a term of fifty years, in place of the surrendered lease to Kantzler.

It is insisted in the supplemental bill that Crilly & Blair are not *bona fide* lessees; that the surrender by Kantzler of his lease, and the executing by the board of the new lease to Crilly & Blair, were only a method of assigning said Kantzler's lease to them, and that Crilly & Blair, acquiring the said leasehold estate *pendente lite*, became trustees thereof for appellant. The bill prays that Crilly & Blair be decreed, upon payment or tender to them of $5500, and with the consent of said board, to assign to Hurlbut said lease, and in default thereof that they be adjudged trustees for complainant, of said leasehold estate, and that an accounting of the rents and profits be had. On a hearing, the original and supplemental bills were dismissed by the Superior Court of Cook county for want of equity, and on appeal to the Appellate Court for the First District the decree was affirmed, and the complainant below brings the case to this court on his further appeal.

Mr. GEORGE CHANDLER, for the appellant:

Specific performance of unilateral contracts will be enforced in a court of equity. Mutuality is not in all cases a necessary condition. Pomeroy on Specific Per. page 238, sec. 164; *Perkins* v. *Hadsell,* 50 Ill. 216; *Estes* v. *Furlong,* 59 id. 300; *Smith & Fleeke's Appeal,* 69 Pa. St. 474; *Vassault* v. *Edwards,* 43 Cal. 458; *Corson* v. *Mulvaney,* 49 Pa. St. 88; *Kerr* v. *Day,* 14 id. 112; 1 Story's Eq. Jur. secs. 715–722; Willard's Eq. Jur. secs. 267, 268; *Maughlin* v. *Perry,* 35 Merr. 352; *Homfrey* v. *Fathergill,* L. R. 1 Eq. 567; *Bell* v. *Howard,* 9 Mod. 302; *Kerr* v. *Purdy,* 50 Barb. 000; *Souffrain* v. *McDonald,* 27 Ind. 269; *Willard* v. *Taylor,* 8 Wall. 557; *Hersey* v. *Giblett,* 18 Beav. 174; *Ewins* v. *Gordon,* 49 N. H. 444; *Barnard* v. *Lee,* 97 Mass. 92; *Jones* v. *Robinson,* 29 Maine, 351; *Gordon* v. *Calvert,* 2 Sim. 253.

Hurlbut was entitled, after the extension of time, to a specific declaration of a forfeiture before his rights could be cut off, and to a reasonable notice before. Waterman on Specific Per. secs. 449, 482; *Sharp* v. *Frimmer,* 24 N. J. Eq. 422; *Durand* v. *Page,* 11 Wis. 15; *Russell* v. *Mecklenberg,* 50 Ala. 476; *Duffy* v. *O'Donovan,* 46 N. Y. 223; *Wallace* v. *Pidge,* 4 Mich. 570; *Bishop* v. *Newton,* 20 Ill. 178; *Morgan* v. *Herrick,* 21 id. 498; *Wallace* v. *McLaughlin,* 57 id. 57.

The provision of the lease which required the assent of the board of education to an assignment, is not an obstacle in the way of specific performance. It was Hurlbut's right to take what Kantzler could give him. *Mertlock* v. *Buller,* 10 Ves. 315; *Cleaton* v. *Gower,* Finch, 164; *Milligan* v. *Cook,* 16 Ves. 1; Waterman on Specific Per. page 24, sec. 127.

Kantzler fraudulently obtained a release of his lease, in violation of his contract with Hurlbut, and the present lessees knew of this contract,—therefore they are trustees for the benefit of Hurlbut. Perry on Trusts, sec. 211; *Powell* v. *Jeffins,* 4 Scam. 487; *McVey* v. *McQuality,* 97 Ill. 93; *Beach* v. *Dyer,* 93 id. 295. See, also, *Haughwout* v. *Murphy,* 22

N. J. Eq. 531; *Crawford* v. *Betholf*, Sax. 460; *King* v. *Ruckman*, 6 C. E. Green, 599; *Story* v. *Lord Windsor*, 2 Atk. 631; *Murray* v. *Ballou*, 1 Johns. Ch. 566.

Mr. DANIEL L. SHOREY, for the appellees Crilly & Blair:

Specific performance rests in the discretion of the court. *Allen* v. *Woodruff*, 96 Ill. 20; *Fish* v. *Leser*, 69 id. 394.

Crilly & Blair do not hold in trust for Hurlbut, and the offer, even if it had been accepted by Hurlbut, could not be specifically enforced without first obtaining the written consent of the lessor.

Mr. GEORGE F. BLANKE, for the appellee Kantzler:

The court will not order specific performance, unless it can execute the whole contract. Fry on Specific Per. sec. 536; *Columbine* v. *Chichester*, 2 Phil. 27.

Application for specific performance is addressed to the sound discretion of the court, and it is not a matter of course that it will be decreed because a legal contract exists. *Frisby* v. *Balance*, 4 Scam. 287; *Kimball* v. *Tooke*, 70 Ill. 56; *Race* v. *Weston*, 86 id. 91; *Hetfield* v. *Wiley*, 105 id. 286; Fry on Specific Per. sec. 233, note 3.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Waiving all other objections to the relief sought by appellant in his bill, there is one objection which we regard as fatal to his claim. It is obvious that no effective and valid assignment of this lease could have been made by Kantzler without the consent of the board of education, and the board never did consent to such an assignment to Hurlbut,—and Crilly & Blair can not now assign to Hurlbut without such consent of the board. Kantzler having surrendered his lease, and the board having executed a new one to Crilly & Blair on different terms and running for a much longer time, it has become impossible for the court to specifically enforce

the contract. The complainant has no equities against the board of education, and no right, legal or equitable, to require them to consent to the assignment of either of the leases, in whole or in part. A party leasing has a right to prohibit any assignment of the lease without his assent, otherwise he might have his property occupied by a tenant he would not trust, or by one under no personal covenant to pay the rent.

In Fry on Specific Performance, sec. 536, it is said: "The court will not compel specific performance of a contract unless it can execute the whole contract." In 3 Parsons on Contracts, (7th ed.) 362, the author says: "If one promising to sell land has no title to it, and the buyer knows this, and the seller is unable afterwards to acquire title, a decree (for specific performance) will not be granted,"—citing *Love* v. *Cobb,* 63 N. C. 324. Again, on page 361, he says: "A vendor will not be ordered to make a sale of a thing, or give a deed of land, when he has no legal title,"—citing *Malden* v. *Fyson,* 9 Beav. 347. In 3 Pomeroy's Eq. Jur. sec. 1405, the author says: "The contract must be such that its specific enforcement would not be nugatory. * * * Although the contract, by itself, can be specifically enforced, the defendant must also have the capacity and ability to perform it, by obeying the decree of the court. * * * Finally, the contract must be such that the court is able to make an efficient decree for its specific performance, and is able to enforce its own decree when made."

There is no allegation in the bills, or proof, that the consent of the board of education will be given, or ever was given. On the contrary, the proof is that the board refused to consent to the assignment of the original lease to the complainant, and did consent that it might be transferred to Crilly & Blair. If the court can not compel the board to consent to any assignment to complainant, how can it secure the execution of a valid and binding transfer of the lease? Since the dismissal of the bill as against the board, the court

has no pretence of power to make a decree compelling its consent to the transfer of either lease. Hurlbut, at the time he took the contract from Kantzler, knew that the latter could not transfer his leasehold interest without the express consent of a third party, against whom he could claim no rights, legal or equitable, and consequently took his contract under such circumstances as to make its validity and effectiveness depend upon the exercise of the will of another under no obligation to do any act for him or for his benefit. Hurlbut having accepted this contract with a full knowledge of this provision in the lease, can not have damages in a court of chancery in lieu of specific performance, and for the same reason is not entitled to have Crilly & Blair declared to hold as trustees for him.

We think the decree was right. The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*