MORRIS SELLERS

*v.*

HOWARD GREER.

*Opinion filed April 21, 1898.*

1. CONTRACTS—*a contract may be mutual, though not signed by both parties.* A contract signed by only one of the parties is mutual, if the other party, upon its delivery to him, assents to its terms and holds and acts upon it as a valid agreement.

2. CORPORATIONS—*stockholders cannot dispose of or encumber corporate property.* The property of a corporation is not subject to the control of its members or stockholders, and a contract by a stockholder to sell or dispose of the corporate property, not authorized or ratified by the corporation, has no binding effect.

3. SPECIFIC PERFORMANCE—*contract must be such that the court can enforce decree when made.* To warrant specific performance the contract must be of such a character that the court may make an efficient decree and enforce it when made.

4. SAME—*contract by a stockholder to sell corporate property cannot be specifically enforced.* A court of equity cannot enforce specific performance of a contract by a stockholder to dispose of the corporate property, made without the authority of the corporation and not afterwards ratified.

5. SAME—*when equity will not retain bill to assess damages for breach of contract.* A bill for specific performance of an agreement to sell property will not be retained to assess damages for a breach of the contract, where the complainant knew when he filed his bill that the vendor had parted with the title to the property.

*Greer* v. *Sellers,* 64 Ill. App. 505, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This was a bill for specific performance, brought by Howard Greer, against Morris Sellers, in the Superior Court of Cook county. The cause proceeded to a hearing on the pleadings and evidence, and the court entered a decree dismissing the bill. To reverse the decree Greer appealed to the Appellate Court, where the decree was

reversed and the cause remanded for the purpose of allowing Greer to recover such damages as he may have sustained on account of the failure of Sellers to perform the contract. To reverse the judgment of the Appellate Court Sellers appealed to this court.

Upon looking into the record it appears that Morris Sellers and Howard Greer had been associated together in the business of manufacturing railroad supplies for several years prior to 1891. In June, 1891, they formed a corporation under the laws of this State, and adopted the name of Morris Sellers & Co., incorporated. The capital stock of the corporation was fixed at $100,000, each share being of the par value of $100, and 499 shares were subscribed for and owned by Morris Sellers and Howard Greer, respectively, each owning that number of shares from the formation of the corporation to the time of filing the bill. The remaining two shares were owned by John M. Sellers and Paul E. Greer, who were sons of said principal stockholders, each owning one share. No money was paid by any of the stockholders for their stock. The 500 shares belonging to Sellers and his son were paid for by turning over the plant and their interest in certain patents to the corporation; and the 500 shares issued to the Greers were paid for by turning over their interest in certain patents controlled by them. All four of the above named parties were stockholders and directors. Morris Sellers acted as president and treasurer and had charge of the office and financial department of the concern. Howard Greer was secretary and manager, or superintendent, and had charge of the factory and manufacturing department of the business.

After the organization of the corporation it did a fair business, and its management and success seemed to have been satisfactory to the parties interested until the latter part of 1894, when trouble arose between the two principal stockholders in regard to the management of the business. Greer made an offer to purchase the Sellers

interest, but the offer was not accepted.   Negotiations continued, however, between the parties until September 4, 1894, when Morris Sellers made a written proposition to buy out Greer.   The proposition was written and executed by Morris Sellers and by him delivered to Greer. It was as follows:

"Outline of proposition between Howard Greer and Morris Sellers:   Greer to take all of the Greer patents and all of the special machinery attached to punching machines; all other appliances belonging to the making of spikes; he surrendering all of his stock in M. S. & Co. and to furnish M. S. & Co. complete set of templates for splices; M. S. & Co. to loan machine No. 4 for six mo. and pay Howard Greer $1800 towards a new machine for cutting spikes; Howard Greer to fill all of the present orders so far as the material now on hand will complete. This agreement to be put in proper form at as early a date as possible, pending the return of the company's att'y to draw up the necessary releases, etc.                     MORRIS SELLERS.

*Tuesday, Sept. 4, 1894.*"

The bill alleged and the evidence tended to prove that the Greer mentioned in the proposition was appellee, and the letters "M. S. & Co." meant and referred to the corporation known as Morris Sellers & Co.

LOESCH BROS. & HOWELL, (FRANK J. LOESCH, of counsel,) for appellant.

JONES & STRONG, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The two following grounds are relied upon by counsel for appellant, in the argument, to reverse the judgment of the Appellate Court: "We claim, firstly, that the proposition is not a contract binding upon appellee or upon appellant; that it lacks mutuality; that the subject matter was the property of a corporation, and not of either of the parties named in the proposition; that appellee is in nowise bound, and so acted as not to legally bind himself, in terms, to said proposition; that it was made under

such circumstances that it was not, and was not intended to be, a complete or binding contract or agreement upon either appellant or appellee; hence, its specific enforcement was not only impossible, but if attempted by way of assessment of damages upon appellant, as the Appellate Court seeks to do, would contravene equitable principles. Secondly, that if all these points are negatived, appellee has yet barred himself of all relief in equity by his own inequitable conduct."

It will be observed that appellee did not sign the contract, and hence it is contended that the contract is not mutual. It appears, however, that the contract was delivered by Morris Sellers, appellant, to appellee, on the day it was executed, and appellee accepted the contract and agreed to its terms and conditions. The acceptance of the contract by appellee assenting to its terms, holding it and acting upon it as a valid instrument, may be regarded as equivalent to its formal execution on his part, as held by this court in *Johnson* v. *Dodge*, 17 Ill. 433, and *Vogel* v. *Pekoc*, 157 id. 339.

But it is said the subject matter of the contract was the property of a corporation, and not of either of the parties named therein, and as the corporation never executed or ratified the contract it cannot be enforced in a court of equity. Of the 1000 shares of capital stock of the corporation Greer and Sellers owned equally the entire amount except two shares, which were held in the names of the respective sons of the two parties. These sons never paid anything for the stock placed in their names, and were mere nominal shareholders, and the only inference to be drawn from all the evidence is, that the two shares were placed in their names in order that the concern might have a sufficient number of stockholders to make up a board of directors. In the management of the affairs of the concern, whatever was done by Greer was assented to by his son, and whatever action was taken by Sellers was approved by his son. As between

appellant and appellee they may be regarded as owners of the property named in the contract, and any contract which they may have made in regard to the property may, as between them, be enforced in a court of equity.

But it is said the proposition was not intended to be a complete and binding contract. There is nothing appearing on the face of the contract, nor is there anything in the evidence introduced on the hearing, which will sustain that position. The contract is definite and specific in regard to what was to be done by each of the parties. By the contract Greer was to do three things: First, he was to surrender all of his stock in the Morris Sellers & Co. establishment; second, he was to furnish a complete set of templates for splices; third, he was to fill all of the present orders, so far as the material then on hand would permit. From the terms of the contract there could be no uncertainty or doubt in regard to what Greer was required to do in order to comply with the contract. As to Sellers, he was required by the contract to deliver over to Greer all of the Greer patents, and what was meant by Greer patents was well understood by both parties.

It is true that Morris Sellers and Howard Greer owned all of the stock of the corporation except two shares, which belonged to their sons. But did this fact confer upon them, or either of them, the power to sell the corporate property? It is conceded that the patents and all the other property named in the contract in question belonged to the corporation Morris Sellers & Co., and the question presented is whether Morris Sellers and Howard Greer, two of the stockholders, without the consent or authority of the corporation Morris Sellers & Co., had the right to divide the corporate property between themselves, or to sell it, as was attempted to be done by the contract in question. A corporation is an artificial being created by law, clothed with certain powers. It acts through its board of directors and officers. Its property is not subject to the control or disposition of

its members or stockholders. They have no power to sell or encumber the corporate property. A reference to a few authorities will fully sustain what has been said.

In Cook on Stockholders (3d ed. sec. 709,) it is said: "The stockholders cannot enter into contracts with third persons. Contracts between the corporation and third persons must be entered into by the directors, and not by the stockholders. The corporation, in such matters, is represented by the former, and not by the latter. Such is one of the main objects of corporate existence. To the directors is given the management and formation of corporate contracts. The stockholders cannot, in meeting assembled, bind the corporation by their contracts in its behalf. Although one person owns a majority of the stock, or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation, or as the corporation, independently of the directors. One person may own all the stock, and yet the existence, relations and business methods of the corporation continue. A single stockholder cannot make a contract for and in the name of the corporation which shall have any binding force or validity, except by subsequent ratification or adoption in the regular manner."

In *Allemong* v. *Simmons*, 124 Ind. 199, it was attempted to hold a corporation liable on a contract made by one Crawford, who was a director and owner of five-sixths of the stock of the corporation. In disposing of the question the court said: "It is true, Crawford was one of the directors of the company and held a majority of the stock; but the existence of these facts confers upon him no power to make contract for the corporation. It could only be bound by the action of its board of directors. The board could have conferred upon Crawford this power, but there is no evidence that it had done so. Crawford, as one of the directors, had no more authority or power than any other director. The board consisted of five members, and three constituted a quorum. Less

than three could make no binding contract for the corporation.   *   *   *   The contract which Simmons and Aleshire executed with Crawford was the mere personal engagement of Crawford with the said parties."

In *Humphrey* v. *McKissock*, 140 U. S. 304, the validity of the action of all the stockholders of a corporation in transferring its property without corporate action arose, and in disposing of the case the court said: "Both the commissioner, and the court in confirming his report and entering the decree mentioned, seem to have confounded the ownership of stock in a corporation with ownership of its property. But nothing is more distinct than the two rights. The ownership of one confers no ownership of the other. The property of a corporation is not subject to the control of individual members, whether acting separately or jointly. They can neither encumber or transfer that property nor authorize others to do so. The corporation—the artificial being created—holds the property, and alone can mortgage or transfer it; and the corporation acts only through its officers, subject to the conditions prescribed by law. In *Smith* v. *Hurd*, 12 Metc. 385, the relations of stockholders to the rights and property of a banking corporation are stated with his usual clearness and precision by Chief Justice Shaw, speaking for the Supreme Court of Massachusetts, and the same doctrine applies to the relations of stockholders in all business corporations. ' Said the chief justice:  'The individual members of a corporation, whether they shall all join or each act severally, have no right or power to intermeddle with the property or concerns of the bank, or call any officer, agent or servant to account or discharge them from any liability. Should all of the stockholders join in a power of attorney to any one, he could not take possession of any real or personal estate, any security or chose in action; could not collect any debt, or discharge a claim, or release damage arising from any default, simply because they are not the legal owners of

the property, and damage done to such property is not an injury to them. Their rights and their powers are limited and well defined.'"

In this court, in *Hopkins* v. *Roseclare Lead Co.* 72 Ill. 373, the right of a stockholder of a corporation to transfer certain leases belonging to the corporation arose, and in disposing of the question the court said (p. 379): "It is insisted that LaGrave had no power to make the sale of the leases, to transfer the control of the suit or to sell the twenty acres of land, as they were all owned by the company. He was but a stockholder, and as such had no power to make the sale. He, although owning the majority of the stock, could not act for the company unless specially authorized. He could, no doubt, control the action of the company by the election of its officers, but still the company could only act through its officers or by expressly delegating power to others, whether a stockholder or other persons." See, also, *England* v. *Dearborn*, 141 Mass. 590; *Newton Manf. Co.* v. *White*, 42 Ga. 148; *Russell* v. *McLellan*, 14 Pick. 63.

From what has been said it is apparent that Morris Sellers, although he owned one-half of the capital stock of the corporation, had no right to sell the corporate property, and any contract he may have made would not be obligatory on the corporation. The corporation Morris Sellers & Co., the owner of the letters patent and other property described in the contract, was not made a party to the bill, and no decree could have been obtained against it if it had been made a party, for the reason it never executed the contract. Nor did it ratify the contract after it was made, but, on the other hand, expressly refused to do so on application of Greer to its board of directors. The bill prayed that Sellers might be compelled to convey the letters patent named in the contract to Greer. He had no title and hence could not make a conveyance, and any decree that might have been rendered would have been nugatory. In a bill for spe-

cific performance the contract must be of such a character that the court is able to make an efficient decree and enforce it when made.   3 Pomeroy's Eq. Jur. sec. 1405.

This case is similar in principle to *Hurlbut* v. *Kantzler*, 112 Ill. 482, where a bill was filed for specific performance against Kantzler, Crilly & Blair and the board of education, to compel the assignment of a lease.   There Kantzler held a lease from the board of education which was not assignable without the written consent of the board.   Kantzler, however, gave to Hurlbut a written agreement to assign the lease, but it was held the agreement could not be enforced against the board as it had not assented to the agreement.   In disposing of the case it is said (p. 488): "There is no allegation in the bills or proof that the consent of the board of education will be given or ever was given.   *  *  *   Hurlbut, at the time he took the contract from Kantzler, knew that the latter could not transfer his leasehold interest without the express consent of a third party, against whom he could claim no rights, legal or equitable, and consequently took his contract under such circumstances as to make its validity and effectiveness depend upon the exercise of the will of another under no obligation to do any act for him or for his benefit."

Appellee not being entitled to a decree for a specific performance, the next question presented is, did the court err in refusing to retain the bill for the purpose of allowing appellee to recover damages for the failure of Sellers to perform the contract?   It appears from the record that a short time before the bill was filed two actions were brought against the corporation Morris Sellers & Co. to recover money due on certain obligations of the corporation.   Judgments were subsequently rendered against the corporation.   After the existence of these judgments came to the knowledge of appellee, four days after he filed the bill in this case he filed another bill against the corporation, in which he prayed for the ap-

pointment of a receiver and that the affairs of the corporation might be closed up. A receiver was appointed, and all of the property, including that described in the contract, was sold by the receiver, and it is insisted by appellant that appellee has no standing in a court of equity to recover damages, because the property described in the contract was sold under a decree procured by him. In the view we take of the case it will not be necessary to determine this question, as there are other grounds upon which the decision of the case may be predicated. In *Doan, King & Co.* v. *Mauzey,* 33 Ill. 227, it was held that a bill for specific performance will not be retained to assess damages for a failure to perform the contract, where the complainant knew when he filed the bill that the vendor had parted with the title to the property. The same rule was declared in *Stickney* v. *Goudy,* 132 Ill. 213. In *Kennedy* v. *Hazleton,* 128 U. S. 667, it was held that specific performance cannot be decreed of an agreement to convey property which has no existence or to which the defendant has no title, and if the want of title was known to the plaintiff at the time of beginning suit the bill would not be retained for the assessment of damages. The same doctrine is declared in *Hurlbut* v. *Kantzler, supra.* Here, Greer, the appellee, knew when he accepted the contract from Sellers that the property named in the contract was owned by Morris Sellers & Co., a corporation. He also knew that Sellers had no authority to sell the property, and knowing these facts he could not maintain a bill for specific performance, nor would the bill be retained for an assessment of damages for a breach of the contract.

The judgment of the Appellate Court will be reversed and the decree of the Superior Court of Cook county will be affirmed.                    *Judgment reversed.*