THE COAL BELT ELECTRIC RAILWAY COMPANY *et al.*

*v.*

THE PEABODY COAL COMPANY *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 5, 1907.*

1. CORPORATIONS—*purchaser of stock of a corporation does not become owner of corporate property.* One who purchases all the stock in a corporation does not become the legal owner of the corporate property in the sense that representations made to him with reference to the property, interests and easements possessed by the corporation can create an estoppel in favor of the corporation itself, which it may rely upon as ground for enjoining interference with such alleged property, interests or easements.

2. SAME—*a corporation sustains same relation to its property after transfer of stock as before.* If a railway corporation, before the transfer of all its stock to an individual, was drawing water supply from a pond by sufferance of another corporation, the fact that the president of the latter may have represented to the purchaser of the stock that the railway corporation had a proprietary interest in the pond does not, by way of estoppel or otherwise, enlarge such use, by sufferance, into an easement.

3. INJUNCTION—*clear and unequivocal evidence required where complainant relies upon an estoppel.* Where the complainant in a bill for injunction relies upon an estoppel as the basis of his claim, the alleged estoppel must be established by clear, precise and unequivocal evidence.

APPEAL from the Circuit Court of Williamson county; the Hon. W. W. DUNCAN, Judge, presiding.

FORMAN & WHITNEL, and WILLIAM H. WARDER, for appellants.

ARTHUR W. UNDERWOOD, and DENISON & SPILLER, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

In 1889, and later, the Egyptian Prospecting Company purchased the coal underlying certain lands in Williamson county and began the sinking of a mine and the construction of a coal washer, near which was constructed a pond for the purpose of collecting water necessary for use in said mine and washer. On March 21, 1901, all the rights of the Egyptian Prospecting Company were conveyed to the Southern Illinois Coal Mining and Washing Company, which continued to own and operate the mine and washer until January 7, 1905, when it conveyed all its interests to the Peabody Coal Company of Illinois. In 1901 the Coal Belt Electric Railway Company built an electric railroad passing near the said mine and constructed its power house near said pond. The water supply for this power house was first obtained from the pond above mentioned under a verbal arrangement between the presidents of the two companies, the railway company paying nothing for the privilege and having no right beyond the oral consent of the president of the Southern Illinois Coal Mining and Washing Company. The water was used in this way for some time but with much controversy between the superintendents of the two companies, the superintendent of the mining company demanding, when the water was low in the pond, that the railway company should cease using it. Finally the railway company laid a pipe to the shaft of another mine and for a few weeks used the water from that mine, until a deep well was driven near the power house. The water obtained from the well was not good for use in the boilers, and while

it could be used and was used to some extent, the railway company continued to use the water from the pond whenever it was permitted to do so and at times without the knowledge of the mining company. The stock of the railway company at first was owned equally by Francis S. Peabody, Arthur W. Underwood and Frank P. Reed, the latter being president of the company. Later Mr. Reed sold his stock to the other two, and in 1902 or 1903 they sold all the stock to the Peabody Coal Company of New Jersey. The stock of the Southern Illinois Coal Mining and Washing Company originally belonged to Mr. Peabody, Mr. Reed, Mr. Armstrong and Mr. Morris. The Peabody Coal Company of New Jersey owned all the capital stock of the Peabody Coal Company of Illinois, which was a distinct corporation, and Francis S. Peabody was president of both companies. The Peabody Coal Company of Illinois owned all the capital stock of the Southern Illinois Coal Mining and Washing Company in 1904. On December 12, 1904, the Peabody Coal Company of New Jersey sold to George J. Gould all the shares of the capital stock of the railway company for a consideration amounting to $710,000, and the parties executed a written contract of sale, whereby the Peabody Coal Company guaranteed the existence of certain facts in regard to the indebtedness, property, franchises and other conditions of the railway company, and made certain agreements not necessary to be specifically stated, in regard to the traffic of said railway company and the mines controlled by the Peabody Coal Company. After the transfer of the stock to Mr. Gould the railway company continued using water from the pond. The superintendent of the mining company notified the superintendent of the railway company that the water was not sufficient for both and that the railway company must make some other arrangement for water. Finally, on September 22, 1906, the Peabody Coal Company notified the railway company to remove its intake pipe from the pond within two days, or on failure to do so

the coal company would remove it.   Thereupon the railway company, George J. Gould and the other appellants filed their bill in the circuit court of Williamson county, alleging that the individual appellants were the owners of all the stock of the railway company, and that in the sale of said stock to Gould the Peabody Coal Company and F. S. Peabody showed him the property of said railway company, and, as a part thereof, said pond, and stated that the railway company had a proprietary interest in said pond and in the water therein, and that said pond was a part of the plant of the railway company.   The bill prayed that the Peabody Coal Company be enjoined from removing the railroad company's intake pipe from said pond, and from interfering in any way with the taking by the railway company of water from said pond for its power house.   A temporary injunction was issued, an answer was filed, and on a hearing the temporary injunction was dissolved and the bill was dismissed for want of equity.   The complainants thereupon prosecute this appeal.

The Coal Belt Electric Railway Company had no easement in the pond and could not itself maintain this bill.   It is claimed that the circumstances of the purchase of the stock of the railway company by Mr. Gould create in his favor an equitable estoppel against the Peabody Coal Company's denying that the railway company has an easement to take its supply of water from the pond.   Appellants claim that Mr. Gould, by his purchase of the stock of the railway company, acquired all the property of the railway, and, in addition, the right to a supply of water for the power house from the pond.   The Peabody Coal Company of New Jersey had no direct ownership of the property of the railway company but was the owner of its stock, and it was the latter which was the subject matter of the contract with Mr. Gould.   By its purchase Mr. Gould did not acquire the ownership of the property of the railway company.   The ownership of that property remained in the Coal Belt Electric

Railway Company as before, unaffected by the sale. Mr. Gould merely became a stockholder of the railway company but not the owner of its property in a legal sense, though he could control its action by the selection of its officers. (*Humphreys* v. *McKissock,* 140 U. S. 304; *Sellers* v. *Greer,* 172 Ill. 549; 2 Cook on Stock and Stockholders, sec. 709.) After the transfer of the stock the Coal Belt Electric Railway Company sustained the same relation to its property as before. It neither acquired nor lost any right, by estoppel or otherwise, for it was no party to the transaction. It drew water from the pond by sufferance before the change in the ownership of its stock, and it had no greater right afterward.

But if the sale had been of the property of the railway company the evidence is insufficient to support the bill. The allegation is that the defendants showed the pond as a part of the property owned by the Coal Belt Electric Railway Company, and stated that said company had a proprietary interest in said pond and the water therein, and that said pond was a part of the plant of said company. Mr. Middleton was Mr. Gould's representative to inspect the physical property of the company before the purchase of the stock, and he testified that Mr. Peabody told him the supply of water was from the pond; that it was a part of the power plant and that the supply was sufficient to operate the plant. Mr. Burns testified that Mr. Peabody said the supply of water came from the pond, and that "we" have a proprietary interest in the pond. Mr. Peabody testified that he said the supply of water came from the pond, but that he did not say that the railway company had a proprietary interest in the pond or that it was a part of the railway company's property. This is all the evidence on this point. It was true that the supply of water came from the pond. The coal companies which Mr. Peabody represented had a proprietary interest in the pond, and if he made the statement Mr. Burns testified to, "we" could as well refer to the coal

companies as to the railway company. As to the statement that the pond was a part of the plant of the railway company, one witness asserts and the other denies that it was made. This testimony falls short of that clear, precise and unequivocal evidence requisite to establish an estoppel. In the written contract which was prepared after Mr. Middleton had inspected and reported upon the property nothing is said about the water supply, though all other items of property are mentioned in detail. If the parties understood that the pond was a part of the plant of the railway company, it is strange that so important an item should have been omitted from the guaranty which was required of the defendant in the contract for the sale of the stock.

Since neither the Coal Belt Railway Company nor the Coal Belt Electric Railway Company had any easement in the pond, a conveyance of all the property would have carried no right to draw water from the pond as appurtenant to the property. The warranty of the Peabody Coal Company that the Coal Belt Electric Railway Company owned a power house with machinery therein, a theater, also a pump-house and machinery connected therewith, also a battery house, and other appurtenances, all of which property was to be mentioned in an inventory then being made up by the representatives of the parties, could not apply to an easement for drawing water, which was not mentioned in the warranty or the inventory, and did not, in fact, belong to the railway company.

The evidence did not entitle the appellants to the relief prayed for, and the bill was properly dismissed.

*Decree affirmed.*