## Superior Mining Company et al., Appellants, v. White Coal Company et al., Appellees.

1. CORPORATIONS, § 170*—*when stockholders may not dispose of all of tangible corporate property against wish of minority.* More than two-thirds of the stockholders of a solvent, going, private Illinois corporation were not authorized, in their sound discretion, to dispose of all the tangible property of the concern against the protest of a minority stockholder.

2. CORPORATIONS, § 170*—*when majority stockholder may not dispose of tangible assets of corporation.* Although one person owns a majority of the stock of a corporation, or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation, or as the corporation independently of the directors, in the disposition of the tangible assets of the corporation.

3. CORPORATIONS, § 364*—*when president may not give option for sale of all of tangible assets of corporation.* The president of a corporation cannot act for the corporation in such an important and unusual matter as giving an option for the sale of all the tangible assets of the corporation unless specifically so authorized by the directors.

4. CORPORATIONS, § 364*—*when specific performance of option to purchase coal mine given by president will be denied.* Specific performance of an option to purchase a coal mine constituting all of the tangible assets owned by a corporation, given by the president who was also a director, was denied, although the sale was made in good faith, for a good price and was free from fraud, it appearing that the directors had never conferred authority on such president to dispose of the mine, and had not ratified his action, and that one of the stockholders had opposed the attempted sale from the first instant.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 12, 1919. Rehearing denied June 6, 1919.

R. W. ROPIEQUET and MAURICE V. JOYCE, for appellants; ALBERT L. SCHMIDT, of counsel.

HARRY A. FRANK and JOHN E. HAMLIN, for appellees.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

The White Coal Company was incorporated under the laws of the State of Illinois with a capital stock of $5,000, divided into 50 shares of the par value of $100 each, owned as follows, namely: Robert White, 9 shares; Samuel White, 9 shares; Jemima White, executrix of the last will and testament of James R. White, deceased, 11 shares; Frank Sergent, 9 shares, and Clarence V. Beck, 12 shares.

Jemima White is the mother of Robert White and Samuel White and the mother-in-law of Frank Sergent. Robert White, Frank Sergent and Clarence V. Beck were the directors. Robert White was president and Clarence V. Beck was secretary at the time of the transaction in question. The corporation was engaged in the business of mining and selling coal and had its principal office at Belleville, Illinois. It originally operated the Massey mine, which was not a success, and it later acquired from the Kolb Coal Company a lease of the Valley mine. Clarence V. Beck was president of the St. Louis Coal Company and had a favorable contract with the White Coal Company to sell the output of the Valley mine, which contract was determinable upon sale of the Valley mine by the White Coal Company. Under the lease of the Valley mine the coal territory therein was very limited, and no coal other than that included in the lease could be taken out through the shaft of the Valley mine. Prior to the increase in the price of coal, due to the war, the business of the White Coal Company had not been good, but on March 19, 1917, it declared a dividend of 200 per cent. It was indebted to the Kolb Coal Company in the sum of $4,400, part of the consideration paid for the lease of the Valley mine. Robert White, the president, had offered the mine for sale at $25,000. Such action seems to have been favored by the White family which desired

to dispose of the mine while prices were high, but no action of the corporation as such was taken. He also made an unsuccessful attempt to sell the Valley mine to William H. Bochmer of St. Louis in June, 1917. It is a matter of dispute whether Beck consented to such a sale or was even consulted about it. Later Robert White offered to sell the Valley mine for $35,000 to Lee Grandcolas of Belleville, who secured an agreement from John Henderson, president of the Superior Mining Company of St. Louis, to buy at that price and instructed Grandcolas to secure an option on the mine. Robert White gave him an instrument in writing purporting to be such an option and Grandcolas assigned the same to the Superior Mining Company, which proceeded to secure a lease of coal lands adjoining the Valley mine and a longer time lease of the Valley mine. At the time the claimed option was given Grandcolas, · Robert White and Frank Sergent were the only stockholders present. Beck was in Chicago at the time and Grandcolas was so informed by Robert White, who expressed some doubt both as to his right to sign the option and the attitude which Beck would take in the matter. Upon Beck's return from Chicago a meeting of the stockholders of the White Coal Company was held at the home of Jemima White, but she did not attend the meeting. The other stockholders were present as were Grandcolas and his attorney, P. C. Otwell. Frank Sergent had previously resigned as director and Robert White and Clarence V. Beck were the only directors present. Otwell had prepared a formal waiver of notice of directors' meeting and a conveyance for the president and secretary to sign conveying the lease of the Valley mine to the Superior Mining Company. Beck refused to sign either paper and requested time to consult an attorney and learn what his rights were. He promised to and did return the next evening at which time he an-

nounced that he had found out what his rights were as a minority stockholder and that he intended to prevent the sale. At that time he announced that he would purchase the shares of the White family on the basis of $35,000 for the entire property, and they have since sold their interests to him. Beck refused to convey the lease of the mine to appellants and they filed their bill for specific performance against appellees in the Circuit Court of St. Clair county. Appellees filed a joint answer denying that appellants were entitled to the relief sought, to which appellants filed a replication and the cause was referred to the master in chancery for the purpose of taking the proof and reporting same, together with his findings of fact and conclusions of law. After hearing the evidence, the master recommended that the bill be dismissed for want of equity. Objections were filed, overruled and on motion ordered to stand as exceptions. A decree was entered overruling the exceptions, confirming and approving the report of the master, dismissing the bill for want of equity and rendering judgment against appellants for costs, to which decree appellants excepted.

The record which has been brought to this court for review shows that Beck, a stockholder, never consented to the attempted sale sought to be enforced; that the attempted sale did not follow corporate action by the board of directors or officers, based upon authority given by the unanimous consent of the stockholders, but it does show that such sale was made in good faith, for a good price and is free from fraud. It is agreed by appellants and appellees that there is but one legal question involved, that is, whether more than two-thirds of the stockholders of a solvent, going, private Illinois corporation are authorized, in the exercise of a sound discretion, to dispose of all the tangible property of the concern against the protest of a minority stockholder. In our opinion the question raised has been answered

by the courts of this State, and under the facts a rule of property is involved which we are not at liberty to disregard. In *Sellers v. Greer,* 172 Ill. 549, quoting from Cook on Stockholders (3rd Ed.), sec. 709, the court approves this doctrine: "The stockholders cannot enter into contracts with third persons. Contracts between corporations and third persons must be entered into by the directors, and not by the stockholders. The corporation, in such matters, is represented by the former, and not by the latter. Such is one of the main objects of corporate existence. To the directors is given the management and formation of corporate contracts. The stockholders cannot, in meeting assembled, bind the corporation by their contracts in its behalf. Although one person owns a majority of the stock, or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation, or as the corporation, independently of the directors. One person may own all the stock, and yet the existence, relations and business methods of the corporation continue. A single stockholder cannot make a contract for and in the name of the corporation which shall have any binding force or validity, except by subsequent ratification or adoption in the regular manner." In the same case the court quotes at length to the same effect from *Allemong v. Simmons,* 124 Ind. 199; *Humphreys v. McKissock,* 140 U. S. 304, and *Smith v. Hurd,* 12 Metc. (Mass.) 385.

The record fails to show that the directors of the White Coal Company ever conferred upon Robert White authority to sell the Valley mine and dispose of all its tangible property, and his attempted sale was never ratified by the directors. His act in giving the option in question was therefore the act of an individual stockholder, or, at most, the act of the stockholders of the White family. His duties were those usual to

the office he filled. It is not contended that the president of a corporation usually has the power to dispose of the tangible property of the concern. Notwithstanding he was the president and a director of the company and may have represented the interests of the White family, Robert White could not act for the White Coal Company in such an important and unusual a matter unless specifically so authorized by its directors. *Hopkins v. Roseclare Lead Co.*, 72 Ill. 373. The record shows that Beck, a director and stockholder, opposed the attempted sale by White from the first instant. This question is discussed in *Harding v. American Glucose Co.*, 182 Ill. 551, where the court uses the following language: "The shares of stock owned by a stockholder derive their value from the corporate property and franchise, although the stockholder's legal property in his stock is distinct from the property of the corporation (*Porter v. Rockford, R. I. & St. L. R. Co.*, 76 Ill. 561). If the shares derive their value from the corporate property and franchise, they will have no value practically, when all such corporate property is disposed of, and the right to carry on the business is destroyed. What was here attempted was an abandonment of the business and a sale of the assets without a legal termination or dissolution of the company. It makes no difference that the stockholder is to be allowed to receive his proportionate share of the proceeds of the sale of the property. He has the right to hold his investment in the form of stock, and a change of such investment against his consent is a change which affects his pecuniary or financial interests. He has the right to be the judge, whether such a change in his pecuniary status shall be made, or whether he shall continue his investment in the form of stock." When Beck as a stockholder refused his consent to a sale of the assets of the White Coal Company, he exercised his legal rights as announced in the above-entitled cause.

We agree with the statement made in Cook on Corporations (4th Ed.), secs. 669, 670, and approved in *Harding v. American Glucose Co., supra,* that "ever since the case of *Abbot v. American Hard Rubber Co.,* 33 Barb. [N. Y.] 578, the law has been clearly established in this country, that a dissenting stockholder may prevent the sale of all the corporate property by the directors, or by a majority of the stockholders, where the corporation is a solvent, going concern." There was no action taken by the board of directors of the White Coal Company, either before or after Robert White gave the option in question, and therefore the same cannot be enforced, as under our statute a corporation can act only through its board of directors and officers. The ownership of stock in a corporation confers no ownership of its property. "The property of a corporation is not subject to the control of the individual members, whether acting separately or jointly. They can neither encumber nor transfer that property nor authorize others to do so. The corporation, the artificial being created, holds the property and alone can mortgage or transfer it, and the corporation acts only through its officers, subject to the conditions prescribed by law." *Manufacturers' Exhibition Bldg. Co. v. Landay,* 219 Ill. 168. In view of what we have hereinbefore said, appellants, under the facts of this case, are not entitled to the relief prayed for in their bill, and the decree of the Circuit Court must be affirmed.

*Affirmed.*