### In re KEENAN.

### BARLEY et al. v. JONES et al.

(Circuit Court of Appeals, Seventh Circuit. December 10, 1926.)

No. 3742.

1. Bankruptcy ⟞⟞310—Claim on bankrupt's liability as guarantor of corporate notes secured by mortgage is not secured because of bankrupt's ownership of all corporate stock, except one share each, held by wife and son (Bankruptcy Act, § I, subd. 23 [Comp. St. § 9585]).

Claim against bankrupt's estate, based on his personal liability as guarantor of corporate notes secured by mortgage, *held* not secured, within meaning of Bankruptcy Act, § 1, subd. 23 (Comp. St. § 9585), because of ownership by bankrupt of all stock of corporation, except one share each, given to his wife and son for purpose of continuing corporate existence.

2. Bankruptcy ⟞⟞316(4)—Claim based on guaranty of secured notes held provable.

Claim based on bankrupt's guaranty of notes secured by mortgage is provable against bankrupt estate.

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois.

In the matter of the bankruptcy of Arthur J. Keenan. Claims of Frank C. Barley and others, opposed by Frank E. Jones and others, trustees, were disallowed by the referee. His order was affirmed by the District Court, and claimants appeal. Reversed.

Adlai H. Rust, of Bloomington, Ill., for appellants.

Lester H. Martin, of Bloomington, Ill., for appellees.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This matter is here upon an agreed statement of facts, prepared and filed in accordance with equity rule 77, by which it appears that: On January 10, 1919, the Leroy Investment Company, a corporation owning 10 sections of land in Colorado, executed $36,000 of notes and a mortgage or trust deed upon the land to secure their payment. The notes became due January 10, 1924. Before the notes and mortgage were issued the bankrupt guaranteed payment of the notes and interest by indorsing upon each note: "I hereby guarantee payment of this note and interest accruing thereon. A. Jay Keenan." At this time the bankrupt and two other persons held all of the stock of the investment company, and shortly thereafter the bankrupt purchased the stock of the other stockholders, and gave one share each to his wife and his son, to "continue the corporate existence of the corporation." The bankrupt was then elected president, his son secretary and treasurer, and his wife vice president of the company. "The corporate existence was maintained and the corporation was still in existence" at the time of the hearing, and the title to the land was still in the company. On May 19, 1924, the guarantor was adjudicated a bankrupt, and in his schedule of assets he listed the entire capital stock of the company. The claimants, each holding at least one of the notes, appeared and filed their claims with the referee. The claims were based upon the liability of the bankrupt as guarantor. The referee disallowed the claims and certified to the District Judge the question whether the claims were secured within the meaning of the Bankruptcy Law; and the decision of the referee was approved.

Upon the ground that the ownership by the bankrupt of all the stock of the corporation made him in equity the owner of the corporate property, it was held that the claims were secured within the meaning of subdivision 23 of section 1 of the Bankruptcy Act (Comp. St. § 9585). This subdivision provides:

"'Secured creditor' shall include a cred-

itor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this act, or who owns such a debt for which some indorser, surety, or other person secondarily liable for the bankrupt has such security upon the bankrupt's assets."

Under this, as the District Judge observed, "a creditor, to be secured, must either (a) hold security against the property of the bankrupt; or (b) be secured by the individual obligation of another who holds such a security." He evidently put his decision upon clause (a), holding that the mortgaged property became the property of the bankrupt by his acquiring all the stock of the company, and that the appellants thus came to hold security against the property of the bankrupt.

The claims were based, not upon the notes, which were secured by mortgage upon the property of the company, but upon the guaranty of the bankrupt. "If the debt is of such a nature that an action upon contract to collect it could be brought against the bankrupt, it is provable, although it might be collected from others. The test is: Could the claimant have maintained an action against the bankrupt?" Collier on Bankruptcy (11th Ed.) p. 953.

[1, 2] The claimants had provable claims against the bankrupt upon his guaranty, and this without regard to the fact that the notes, the contracts of the company, were secured by mortgage upon the company's property. The contract of the guarantor was his separate contract, and his liability thereon was in no way affected by the fact that the notes which he agreed to pay were secured by a mortgage executed by the company upon its property.

The agreed statement of facts does not show that the bankrupt was the owner of all of the stock. By that statement it appears that his wife and his son are still the owners of two shares of the stock. The statement says that they paid no consideration for the shares; that bankrupt gave the shares to them. No reason is suggested why such gift was not valid and effective; why the title to these shares did not pass as effectively by gift as it might have passed by purchase or sale. Having given these shares away, bankrupt had no right to list them as his own, and could pass no title to them.

In Sellers v. Greer, 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589, we have the exact situation here. Sellers and Greer formed a corporation with 1,000 shares of stock. Each held 499 shares, and each placed title to one share in his son, so as to have the proper number of officers and directors. The sons paid nothing for their stock. Later Sellers and Greer made a contract for a division of the assets of the corporation. Sellers refused to carry out the contract, and Greer brought suit for specific performance. The court held that the fact that Sellers and Greer owned all of the stock but 2 shares, gave them no power to sell the property of the corporation.

In Coal Belt R. Co. v. Peabody Coal Co., 230 Ill. 164, 82 N. E. 627, 13 L. R. A. (N. S.) 1144, 120 Am. St. Rep. 282, it was held that by the purchase and consequent ownership of the entire capital stock of a corporation the purchaser did not become the owner of the property of the company, and in People v. Dennett, 276 Ill. 43, 114 N. E. 493, the same court said: "The stockholders of a corporation * * * have neither legal nor equitable title to the property of the corporation."

In Humphreys v. McKissock, 140 U. S. 304, 11 S. Ct. 779, 35 L. Ed. 473, the Supreme Court, holding that in the decree then in question the trial court had confounded the ownership of stock in a corporation with ownership of its property, said: "But nothing is more distinct than the two rights; the ownership of one confers no ownership of the other."

The claims should have been allowed as unsecured.

Reversed.