Samuel I. Brown, Appellee, v. Fire Insurance Company of Chicago, Appellant.

Gen. No. 36,796.

of this court for the first district at the June term, 1933. Opinion filed April 2, 1934.

FISHER, BOYDEN, BELL, BOYD & MARSHALL, for appellant; DAVID A. WATTS, of counsel.

GILBERT, ROMMEL, BURGER & BAKER, for appellee; HART E. BAKER, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by defendant corporation from a judgment in the sum of $5,000 entered upon the finding of the court after defendant's motions for a new trial and in arrest were overruled. The cause was before this court on a former appeal. *Brown v. Fire Ins. Co. of Chicago,* 265 Ill. App. 393. It there appeared that the trial court sustained a demurrer to plaintiff's declaration, and plaintiff, electing to stand by his pleading, suffered an involuntary nonsuit and appealed from a judgment for costs entered against him. The question there was whether a corporation organized under the Insurance Act (as defendant) could lawfully contract to purchase its own shares of stock; in other words, whether such contract was ultra vires the corporation. Defendant urged that a contract of that kind was ultra vires under the general rules of corporation law, and further that such contract of purchase was prohibited by section 8 of the Fire Insurance statute (Cahill's Ill. Rev. St. ch. 73, ¶ 136, § 8). We held against both contentions, reversed the judgment and remanded the cause with directions that a rule should be entered upon defendant to plead to the declaration.

The mandate of this court was filed in the circuit court March 19, 1932, and the rule was entered.

An affidavit of claim was attached to plaintiff's declaration and on April 2, defendant filed pleas which were supported by its affidavit of merits. Thereafter, by leave of court these pleas were withdrawn and leave given to file additional pleas, the affidavit of merits to stand to the additional pleas. Defendant thereupon filed a plea of the general issue and a special plea that by virtue of the statute under which it was incorporated defendant was without power to make the contract alleged in plaintiff's declaration unless authorized by its board of directors, and that such authority was never given. The affidavit of merits averred that defendant was incorporated August 8, 1929, under an act approved March 11, 1869, as subsequently amended; that Darby A. Day, whose name was signed to the writing set forth in plaintiff's declaration, was not defendant's duly authorized agent to make and deliver the writing, and that such writing was not made and delivered by defendant. Plaintiff filed a general demurrer to the second plea, which was sustained, and the ruling of the court on that point has been preserved by the bill of exceptions. The cause was thereupon submitted to the court without a jury, the evidence taken, and a finding entered for plaintiff with judgment thereon, as already stated.

Upon the former appeal defendant contended that section 8 of the Fire Insurance statute (Cahill's Ill. Rev. St. 1929, ch. 73, ¶ 136, § 8) should be construed as prohibiting the purchase by defendant corporation of its own stock. We held against this contention for the reasons stated in that opinion. It is now contended that by reason of the same section of the statute, defendant was not bound because the contract was not authorized by the board of directors.

The declaration was not amended after the cause was redocketed in the trial court and is therefore the same declaration we considered upon the prior appeal.

Upon that appeal defendant caused only a part of the writing to be abstracted. The abstract now sets up verbatim the offer of defendant to buy the stock which is in the form of a letter to plaintiff signed "Darby A. Day, President." As now abstracted the declaration alleges that "defendant, by Darby A. Day, its president and duly authorized agent in that respect, made its offer" which was accepted October 10, 1930. The affidavit attached to the statement of claim (which also was not abstracted upon the former appeal) states the nature of plaintiff's claim to be "that on, to-wit, February 4, 1930, the defendant by Darby A. Day, its president and duly authorized agent, made an offer in writing to plaintiff, in words and figures as set forth above, to purchase plaintiff's shares of stock at fifty ($50) dollars per share for a period of one year, that thereafter on to-wit, the 10th day of October, 1930, while said offer was still in full force and unrevoked, plaintiff accepted said offer and so notified defendant, and bargained and sold and tendered to said defendant the said shares of stock of the plaintiff, but defendant refused to pay for same," etc.

As against defendant's present contentions, plaintiff invokes the rule of law that a law suit cannot be tried piecemeal and argues that as to the point of authority and power to purchase defendant is now precluded by the former appeal and judgment. Plaintiff cites *Tisdale v. Davis*, 198 Ill. App. 116; *Keuner v. Consumers Co.*, 255 Ill. App. 216. There are, however, cases almost innumerable to the effect that a judgment in this court upon appeal is conclusive not only as to the issues decided but as to all issues that might have been raised upon the appeal, and we think that so far as defendant undertakes to question the authority and power of the corporation with respect to making this contract, it is now precluded by the former judgment of this court.

It is urged by defendant that the question as to the authority and power of defendant to make the contract without approval of the board of directors could not have been raised upon the former appeal for the reason that the declaration upon its face alleged that Darby A. Day, the president, was "duly authorized." It is elementary, of course, that pleadings are upon demurrer taken most strongly against the pleader, and so construed that phrase is perhaps nothing more than a mere conclusion. It was, however, unnecessary to allege in the declaration that the agent who made the contract was duly authorized. An averment that the corporation made it would have been sufficient, and from that standpoint the further averment of the conclusion that the agent named was duly authorized was mere surplusage. Moreover, the question of whether the president of the corporation was in fact authorized to execute the writing here relied upon, presents an issue of fact, irrespective of any interpretation of section 8 of the statute for which defendant contends. This is true assuming that (of which we have no doubt) section 8 is not applicable to this situation, for the reason that in our opinion the purchase of its own stock by an insurance corporation incorporated, as is defendant, is not an investment or a loan within the meaning of the statute. *Savings Bank of San Diego County v. Barrett,* 126 Cal. 413. The application of this section of the statute is by its express terms limited to loans and investments.

The controlling issue here is therefore one of fact, namely, whether Darby A. Day (who, the evidence shows without contradiction, was the president of the defendant corporation and chairman of the executive committee) was or was not without authority to make the contract. Without question, in this State the president of a corporation is by virtue of his office the recognized business head of it, and as a general rule any

contract pertaining to corporate affairs within the general powers of such corporation, executed by the president in its behalf, will (as was said in *Bloom v. Vehon Co.*, 341 Ill. 200, following *Quigley v. MacQueen & Co.*, 321 Ill. 124, upon which plaintiff relies) "in the absence of proof to the contrary, be presumed to have been by authority of the corporation, as one of the powers incident to his office." This power, however, is not without its limitations. In the *Bloom* case it was held that the president of a corporation could not bind the corporation to pay another officer a salary or other compensation unless there was express authority to make such promise. Other limitations upon the power of a president, depend, of course, on the nature of the business conducted by the particular corporation, its charter, by-laws, etc. It is apparent such limitations are necessary. Plaintiff cites *Anderson Transfer Co. v. Fuller*, 174 Ill. 221, where it was held that the president had power to execute a power of attorney to confess judgment on the note in the name of the corporation. The opinion, however, expressly states that the power existed only prima facie and that the facts might be shown to be otherwise. *Domestic Bldg. Ass'n v. Guadiano*, 195 Ill. 222, is cited, where it was held that a corporation was bound by a contract for the purchase of property executed by the president, although the board of directors afterward disaffirmed the sale. However, the facts there were that the directors had knowledge of the execution of the contract at the time it was made and failed to protest against it. *Traders Mut. Life Ins. Co. v. Johnson*, 200 Ill. 359, is cited, where it was held that the president had power to waive a breach of warranty in an application for a policy of life insurance, but here again the basis of the rule applied was that of estoppel by knowledge. *Jones & Dommersnas Co. v. Crary*, 234 Ill. 26, is also cited. There, again, the question was simply one of waiver

and not of the power to execute a contract in the first instance.

There is no question of waiver or estoppel in this case. While in the former case we held and are still of the opinion that under the law of Illinois a corporation has power to purchase its own stock, the exercise of such power in the very nature of things is unusual. Indeed, if the entire capital stock were purchased and retired, it would have the effect of winding up the corporation, and there seems to be abundant authority to the effect that a president of a corporation is without power in the absence of an authorization of the board of directors to make such a contract. The precise question has not been passed upon by the courts of this State, but as indicating the trend of the decisions, *Wagg-Anderson Woolen Co. v. Lesher & Co.*, 78 Ill. App. 678; *Superior Mining Co. v. White Coal Co.*, 214 Ill. App. 381; and *Friedman v. Lesher,* 198 Ill. 21, are interesting and useful. The precise question, however, has been passed upon by well considered decisions in other States. The general rule is stated in 6 Fletcher Cyc. of Corporations (1931), sec. 2848: "Furthermore, as a general rule, the officer who acts for the company in making the purchase must have been previously authorized so to do by the board of directors or the purchase must be subsequently ratified by that body." In 5 Thompson on Corporations (3rd ed.), sec. 4081, p. 955, that authority states: "The purchase (of a corporation's own stock) must be authorized by the directors. The officer undertaking the purchase must be given authority by the directors." In *McCullough v. Satterthwait,* 11 F. (2d) 111, C. C. A. 8 (1926) the Circuit Court of Appeals said: "An officer of a corporation has no power to make a contract for a purchase by the corporation of its own stock without special authorization by the board of directors." This statement of the rule is borne out by *Calteaux v. Muel-*

*ler,* 102 Wis. 525; *West Texas Supply Co. v. Dunivan* (Tex. Civ. App.), 198 S. W. 163; *Farmers' Union Mercantile Co. v. Ricketts,* 129 Ark. 177; *Beach v. Palisade Realty & Amusement Co.,* 86 N. J. L. 238.

The minutes of the meetings of the board of directors and executive committee of this defendant corporation were put in evidence and confirm the oral testimony of Darby A. Day to the effect that no such authorization had been given to him. Of course, every corporation is bound by the apparent authority conferred upon its agents and officers, and the defense is one which may easily be waived, or in which an estoppel where justice required would arise. There are no circumstances in this case on which an estoppel may be based, and for the reasons indicated the judgment of the trial court is reversed.

*Reversed.*

MR. JUSTICE O'CONNOR specially concurring: I agree with the opinion of the court that the judgment cannot stand, and in my opinion, no judgment for the plaintiff could stand because the evidence shows that plaintiff in October, 1928, bought 100 shares of stock for $6,250 from the Illinois Investment Co., which apparently was organized to sell stock of the defendant company, and that concern agreed to buy it back at any time within six months for $50 a share. About 16 months after plaintiff purchased the stock, February 4, 1930, he saw Day, who was president of the defendant Insurance Company, at his place of business and told him that he was indebted to a Chicago bank which held his note, with his 100 shares of stock as collateral, that he wanted to pay his note, and he asked Day if defendant would not make good the offer made by the Illinois Investment Co. when plaintiff purchased the stock, and give plaintiff $50 a share for it; that Day said defendant could not do this at that time, but that defendant would

have paid that amount for the stock a year before. After further talk about the matter, it was agreed that Day, as president of defendant Insurance Company, would write a letter to plaintiff which would show that defendant thought the stock was valuable, and which plaintiff could take to his bank so as to maintain his credit there.

Thereupon the letter of February 4, 1930, was written by Day, as president of the defendant company, addressed to Brown in care of the Commonwealth Trust & Savings Bank, which held plaintiff's note and his shares of stock, as collateral. While the letter states, ''we make you a standing offer for a period of one year at $50.00 per share for your stock in the Fire Insurance Company of Chicago,'' it further goes on to say that the prospects of the Insurance Company are bright and that the stock is valuable. It is a ''puffing'' letter and we think it clear that it was understood by both Brown and Day that defendant had no intention of buying the stock and Brown had no intention of selling it for $50 a share to the defendant, but was merely to use the letter for the purpose of maintaining his credit at his bank. This further appears from the fact that the letter was delivered to plaintiff's bank, as was intended by the parties, and on the trial plaintiff testified that after the letter was given to him by Day, plaintiff's bank held it until it was produced by plaintiff on the trial.

McSURELY, J.: I agree with the specially concurring opinion.