WEST TEXAS SUPPLY CO. v. DUNIVAN. (No. 8292.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 18, 1915. Rehearing Denied Jan. 22, 1916.)

1. APPEAL AND ERROR ☞724—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error which is vague and uncertain, and does not point out any distinct error, need not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022; Dec. Dig. ☞724.]

2. APPEAL AND ERROR ⊚➡736—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error should not be multifarious.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. ⊚➡ 736.]

3. APPEAL AND ERROR ⊚➡742—ASSIGNMENTS OF ERROR—PROPOSITIONS.

An assignment of error should be followed by a proposition germane thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⊚➡742.]

4. APPEAL AND ERROR ⊚➡742—ASSIGNMENTS OF ERROR—STATEMENTS.

An assignment of error should be followed by an appropriate statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⊚➡742.]

5. APPEAL AND ERROR ⊚➡1078 — BRIEFS—WAIVER OF ERROR.

Where no attack is made in the brief upon a special verdict, it is conclusive, as between the parties, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1986, until set aside.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4256–4261; Dec. Dig. ⊚➡ 1078.]

6. APPEAL AND ERROR ⊚➡264 — PRESENTATION OF GROUNDS OF REVIEW—EXCEPTION.

Where no exception was directed to a special verdict, the appellate court need not refer to the statement of facts to determine whether the evidence was sufficient to support it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1533–1535; Dec. Dig. ⊚➡ 264.]

7. APPEAL AND ERROR ⊚➡1052—{REVIEW—HARMLESS ERROR—EVIDENCE.

Where a special verdict that the contract whereby plaintiff purchased the property sued for was ratified by defendant's directors, was not attacked, and so was conclusive, any error in allowing plaintiff to testify that he was the owner of such property is harmless, though the testimony elicited was a conclusion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. ⊚➡ 1052.]

8. CORPORATIONS ⊚➡426—ACT OF OFFICERS—RATIFICATION.

Where the directors ratify an unauthorized contract made by the manager of a corporation, such ratification relates back, and validates the contract from the beginning.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. ⊚➡426.]

9. EXCHANGE OF PROPERTY ⊚➡13 — PERFORMANCE—DELIVERY.

Where plaintiff relied on a contract whereby he was to exchange a certificate of stock for a set of tools, and it appeared that he offered to deliver the stock, but was told by defendant's agent to wait until demand was made, plaintiff was entitled to recover, though there had been no delivery.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 25–29; Dec. Dig. ⊚➡13.]

10. APPEAL AND ERROR ⊚➡230—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

The refusal of a requested charge will not be reviewed, where exceptions, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 2061, were not taken at trial and objections were presented only by motion for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⊚➡230; Trial, Cent. Dig. §§ 680–682.]

11. EXCHANGE OF PROPERTY ⊚➡13—ACTIONS—EVIDENCE.

Where plaintiff claimed that he acquired a set of tools from the defendant corporation under a contract whereby he was to deliver to the corporation a certificate of stock which contract was made with one who was then manager, testimony by one who subsequently became manager at a time when plaintiff was using the tools that he made a different contract with plaintiff is admissible.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 25–29; Dec. Dig. ⊚➡ 13.]

12. APPEAL AND ERROR ⊚➡1056—REVIEW—HARMLESS ERROR.

In such case, though there was a discrepancy as to the dates in such witness' testimony, the refusal nevertheless was prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. ⊚➡1056.]

Appeal from Knox County Court; E. R. Howell, Judge.

Action by J. T. Dunivan against the West Texas Supply Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Jas. A. Stephens, of Benjamin, for appellant. D. J. Brookreson, of Benjamin, for appellee.

BUCK, J. Suit was filed in the county court of Knox county by J. T. Dunivan for the conversion of certain tinner's tools and materials, aggregating the value of $430.50, and $75 per month for the use of said tools, aggregating $275, and for $25 for labor alleged to have been performed by plaintiff for defendant. Plaintiff alleged that the defendant was a merchant engaged in the hardware, furniture, and implement business in the town of Benjamin, and kept a warehouse in the rear of the business house, and that plaintiff was keeping his said tools and materials in said warehouse, at the instance and request of defendant, and was using and occupying the same as a workshop for his tinner's trade; that defendant unlawfully took possession of all of said tools and material and converted the same to its own use and benefit, to the plaintiff's damage in the sum of $430.50. He further pleaded that he was deprived of the use of said tools and materials, and was thereby prevented from pursuing his business as a tinner, to his damage in the sum of $275 above mentioned. He further alleged that at the instance and request of defendant, he had done certain work in putting up five binders, for which the defendant promised to pay him the sum of $2.50 each and also did other work for defendant, amounting to $13. Attached to this petition as Exhibit A was a list of the materials and tools alleged to have been taken and converted by defendant.

Defendant demurred generally and specially to plaintiff's petition, and after a specific denial of the allegations charging the conversion, it alleged that the tools and mate-

rials mentioned did not belong to plaintiff, but to defendant, and denied that it had deprived plaintiff of any right or privilege of pursuing the tinner's work, or any other kind of work, in the town of Benjamin, but alleged that plaintiff of his own free will had abandoned the tinner's work and secured work in the harvest fields and other employment. It further denied that it owed plaintiff for any work performed. Further pleading, it alleged that it was a corporation and that plaintiff was a stockholder therein, and that the defendant, through its agent, turned over to him the materials and tools described, upon the agreement that plaintiff was to pay the defendant the invoice price for all materials used by him in said tinner's business, and that the plaintiff was to have the use of said tools and to work for the defendant at odd times to pay for said use; that in pursuance of said agreement plaintiff took charge of said tools and materials and ran said tinner's business until about the 15th day of June, 1914, at which time the plaintiff abandoned the tinner's business and left the town of Benjamin and secured work with a threshing outfit, and has since said time remained away from said shop; that during the time the plaintiff was in charge of said tin shop, he used sundry materials which belonged to, and were the property of, this defendant, of the alleged value of $142.98, for which it prayed judgment.

In a supplemental petition, plaintiff denied the allegation of defendant as to the rental contract, and denied that he had used either tools or material belonging to the defendant, and asserted that such tools and material used, other than those bought from defendant and for which payment had been made as originally pleaded, were purchased from other parties named.

The cause was submitted to the jury on special issues, and in answer to the issues presented by plaintiff the jury found as follows: (1 and 2) That on or about the 15th day of October, 1914, plaintiff owned and possessed the tools and material contained in the itemized statement attached to plaintiff's petition; (3, 4, and 5) that the defendant appropriated to its own use and benefit, without the consent of the plaintiff, the tools of the value of $196.30 and material of the value of $234.20; (6) that plaintiff could have reasonably earned, from the use of said tools and material from the 15th day of October, 1914, to the time of trial, January 25, 1915, $137.50; (7) that the defendant owed the plaintiff for labor performed, at the instance and request of defendant, $23.00; (8) that plaintiff owed the defendant, for goods procured and bought of defendant, nothing.

At the request of defendant the following issues were presented and the jury answered as indicated:

(1) Did the plaintiff trade for the tin shop from the defendant? Answer: Yes.

(2) If yea, what did the plaintiff give defendant for the tin shop? Answer: Stock.

(3) Did the board of directors of the defendant corporation ratify and approve the sale or exchange of the tin shop for the plaintiff's stock in defendant corporation? Answer: Yes.

Upon these answers of the jury to the special issues submitted, the court rendered judgment for the plaintiff in the sum of $591, from which judgment the defendant appeals.

The evidence tends to show that Dunivan owned five shares of capital stock in the defendant company of the face value of $500, and that J. F. Albright, defendant's general manager and vice president, by request of W. T. Finn, its president, traded said tools and lists of supplies to Dunivan for $300 of said shares of stock, and turned over said tools and material to said Dunivan and told him to use the back room of the warehouse to work in, and that he could work for said company at odd times instead of paying rent, and that whenever plaintiff worked as much as a half day at a time he would be paid for it; that Dunivan offered to go and get his shares of stock, which he had placed as collateral with Bob Gray, from whom he had purchased the same, but Albright told him that he need not do it then; that Mr. Finn, who lived at Seymour, would attend to issuing the new stock, and he could get it later. The $500 worth of stock was all in one certificate, and Albright told plaintiff that he expected Finn would issue new certificates, one back to Dunivan for $200, and that he supposed Finn would either hold the rest as treasury stock, or sell it to some one else. Dunivan continued to work at the tinner's trade, his shop being, as heretofore stated, in the rear of the warehouse, until some time in the summer of 1914, when he left to work in the harvest fields. On his return, about October 15, 1914, he found another man in charge of the shop and using the tools and materials. Mr. Lanham, who had succeeded J. F. Albright, or at least was acting as manager, told him that Finn, the president, had instructed him to do this. Dunivan testified that while he was running the shop he made from $75 to $100 a month, and that, if he had not been prevented from continuing the work, he would have made said amount up until the time of the trial. He further testified that he would have gotten the shares of stock and delivered the same to John Albright for the benefit of the defendant company if Albright had not told him what he did; that he had never offered the stock to Finn or to the board of directors, but did offer it to Mr. U. S. Nicks, who was then acting as manager, but that the latter said he knew nothing about the trade and would not take the stock.

Mr. Albright testified, on behalf of plaintiff, that he was the vice president and general manager of the defendant company for seven or eight years, and that about September, 1913, Mr. Finn, president of the com-

pany, was in Benjamin and had a talk with him, and stated the expenses were too heavy, and instructed him to discharge Dunivan, who was working for the company at that time. Albright told him that he had. hired Dunivan for a year, and that his time was not out yet, and that he could not discharge him under the agreement; that Finn asked him if he could not trade Dunivan out some way to stop his wages, and that Albright replied that he had talked the matter over with Dunivan, and that he could trade him the tin shop for his stock as far as it went; that Finn then instructed him to go ahead and make the trade; that he then saw Dunivan and made the trade just like Finn had instructed him to do, Dunivan agreeing to take the tools and materials at the invoice price and let the company take enough of his stock at its face value to cover the amount; that Dunivan offered to go and get the stock, but that he (Albright) told him to wait until Finn came back to make the transfer of stock, as the latter always attended to that; that he and Dunivan went ahead and invoiced the tools and materials, and that they amounted to a fraction less than $300, and that he turned it over to Dunivan and closed up the trade about September 1, 1913; that he stayed with the company as its manager until about November 1, 1913, and Finn never made any objection about the trade while Albright was there, nor had he ever heard of any one else objecting thereto while he was in charge of the store. He further testified that during all the time he was manager of the company there was never a meeting of directors, nor had he ever heard of such meeting; that he made this trade, just like he had done everything else, under instructions from W. T. Finn; that no directors had ever complained to him for following Finn's instructions. He denied that he had ever received a letter from Finn, instructing him not to make the deal with Dunivan, though while he was manager he received all the mail directed to the company. Such other evidence as will be necessary to note will be given hereafter in the course of this opinion.

[1-4] Appellant's first assignment of error is directed to the action of the court in overruling its special exception leveled at a portion of the plaintiff's petition, which it is alleged charges the defendant with using said tools and having a man in charge of same and "doing the tinner's work at Benjamin, which rightfully belonged to plaintiff." We think appellee's objections to the consideration of said assignment should be sustained, on the ground that the assignment is too vague and uncertain and does not distinctly point out any particular error and is multifarious, and that the proposition thereunder is not germane thereto, and that it is not followed by any statement, etc. But in this disposition of the assignment we feel that

no possible denial of any right to appellant can be charged, because in plaintiff's supplemental petition he plainly shows that he did not intend, by the language used, to allege in his original petition and in the paragraph to which the objection is urged that he had any monopoly of the tinner's business in Benjamin, but merely intended to allege that he had been deprived of pursuing the tinner's business in said town by reason of the acts of defendant alleged.

[5-7] The second assignment complains of the refusal of the court to exclude the testimony of the plaintiff, to the effect that he owned the tin shop and tools in the town of Benjamin, said testimony being as follows:

"I am the owner of the tools and materials as shown in the list in the petition. Mr. W. T. Finn, president of the West Texas Supply Company, wrote a letter to John Albright and told John to trade me this tin shop and material for my stock certificate in defendant company. John Albright told me they would give me the tools and material for my stock in the company. At that time my stock was placed with Bob Gray as security for a note I owed Bob Gray. I told John Albright that I would get the stock, but he told me that I need not do so; that Mr. Finn would have to issue the stock. Albright invoiced and delivered the goods to me; I never at any time tendered the stock to Mr. Finn or any of the directors."

The exception to the admission of this testimony is contained in bill of exception No. 2, instead of bill No. 1, as alleged by appellant in its brief, and the court in his qualification of said bill states that only the first sentence of the above-quoted testimony was brought out by plaintiff on direct examination, and that the balance thereof was brought out on cross-examination by defendant—

"and in the opinion of the court is not germane to this bill, as defendant made a verbal motion to withdraw said testimony from the consideration of the jury, and a separate bill should be predicated on such action of the court on said verbal motion."

As limited by the proposition under this assignment, appellant's complaint is directed only to the refusal of the court to exclude said first sentence above, to the effect that he owned the tinner's tools, because it was a conclusion of the witness—

"and the cross-examination of the witness showed that his claim for the tinner's tools was a trade made by two of the directors, without authority of the board of directors, whereby they traded Dunivan the tinner's tools for his stock certificate in appellant company, and that the stock certificate had never been delivered to appellant at the time of the supposed trade, or tendered into court."

The jury found, in answer to an issue presented by the defendant, that the board of directors of the defendant company ratified and approved the sale or exchange of the tin shop for the plaintiff's stock in the corporation. No attack is made in the brief upon this finding, and therefore it becomes conclusive as between the parties until it is set aside. Article 1986, Vernon's Sayles' Texas Civil Statutes. No exception having been

directed to said answer, we are not required to refer to the statement of facts to see whether or not the evidence is sufficient to sustain that portion of the verdict. Robertson v. Kirby, 25 Tex. Civ. App. 472, 61 S. W. 967. Moreover, it has been held that:

"Ownership of personal property is a fact that can be proved by oral testimony, given by one who has adequate knowledge." 9 Encyc. of Evidence, p. 263; also Supp. same work, 1915, vol. 9, 1405, and cases there cited.

"Ownership of personal property is a fact to which a witness may testify; and on cross-examination he may be required to state the facts on which the claim of ownership rests." Steiner v. Tranum, 98 Ala. 315, 13 South. 365.

"A statement by a witness that certain property in controversy belongs to him is not inadmissible as a conclusion, since the question calls for a fact as well as for a conclusion." Murphy v. Olberding, 107 Iowa, 547, 78 N. W. 205.

But some of us doubt whether the authorities in this state go to the extent of those cited, and prefer to base our action in overruling this assignment on the ground that the error, if any, was rendered harmless by the unchallenged finding of the jury above mentioned. The evidence is practically undisputed that John Albright, the vice president and manager of the defendant corporation, made the trade as alleged by plaintiff.

[8] The third assignment is as follows:

"You are instructed that before you can find that the tools and tin shop is the property of the plaintiff, you must find: First, that the board of directors authorized J. F. Albright to exchange the tools, tin shop, and material for the plaintiff's stock; second, you must find that the plaintiff delivered to the defendant his stock certificate, and, unless you so find, you will find for the defendant."

The failure of the court to give this instruction is urged as error for the following reasons, to wit:

"(1) Before the defendant could in any way be bound by the contract, it was incumbent upon the plaintiff to prove, not only that Albright was the agent of the defendant, and [but] that the board of directors had authorized said Albright to make the contract with plaintiff. (2) It was the duty of the court to construe and instruct the jury as to the legal effect of the contract; and, as the court nowhere instructed the jury as to the legal effect of this contract, the refusal of this charge was error."

Upon the first point, even though said contract had been made by J. F. Albright without express authority by the directors, and admitting, for the time, that said Albright had no such apparent authority, by reason of the position he occupied in said company, yet, after learning that said contract had been made, the board of directors ratified it, as found by the jury, such ratification would be equivalent to precedent authority.

"By ratifying an unauthorized act, a principal assumes and adopts it as his own, and, as has been seen, this adoption extends to the whole of the act—it goes back to its inception and continues to its legitimate end." Mechem on Agency, § 167, p. 108.

Therefore, if the directors ratified the action of Albright in making the trade he did, such ratification was tantamount to and had the legal effect of prior authority.

[9, 10] Upon the second question involved in this requested charge, there is no material conflict in the testimony as to what took place with reference to the delivery of the stock certificate. Both Albright and Dunivan testified that the latter offered to turn over to the former the $500 worth of stock in order that he might receive a new certificate for $200, and also surrender the value of $300 in shares of stock in payment of the tools and material, but that Albright told Dunivan to keep the shares of stock for the present, and that as soon as Finn came down from Seymour, he would issue the $200 certificate to Dunivan. The unchallenged finding of the jury in answer to issues 1 and 2, submitted by the defendant, is that the plaintiff did trade for the tin shop from the defendant and gave him stock in exchange therefor. We held in the case of Railway v. Wheat, 173 S. W. 974, that objections to instructions given and refused will not be considered where the record does not show that exceptions were taken as required by article 2061, Vernon's Sayles' Texas Civil Statutes. No bill of exception is contained in the record, complaining of the action of the court in this respect in the instant case. Therefore, if we were correct in the holding in the Wheat Case, upon the authorities therein cited, we would be justified in refusing to consider this assignment. The transcript in the instant case shows that the instruction as above set out was asked by the defendant, and by the court refused, but in its motion for a new trial, where he purports to set out this instruction and allege error because of its refusal, an instruction, different in wording, though probably to the same general effect, is given. Probably this evident variance would suggest another ground for our declining to consider the assignment, even though we should be of the opinion that the instruction tendered ought to have been given. But if we should consider the assignment, we would overrule the same, because, for the reasons stated, we do not find that it presents prejudicial error.

For like reason we overrule the fourth assignment, which urges error in the refusal of the court to give what the appellant designates as "special charge No. 3," which is in the form as given in the motion for new trial. This charge appears in the transcript as "special charge No. 1," and the assignment raises the same question as presented, in the main, in the third specification, and for the reasons given in the discussion of the former assignment, this assignment also is overruled.

[11, 12] The eighth assignment complains of the action of the court in not permitting U. S. Nicks to testify, to the effect that said Nicks made a trade with plaintiff during the latter part of September, 1913, whereby the plaintiff was to use the tools of the West Texas Supply Company, and for which the plaintiff was to work for the defend-

ant in its store at odd times to pay for the use of said tools. We think this testimony should have been admitted. The plaintiff testified that he made the trade with Albright about September 1, 1913. Nicks testified that he was manager for the defendant company from about the 1st of November, 1913, to the 7th day of March, 1914, and that while he was manager of said company, Dunivan was running the tin shop. If, as claimed by appellant, Nicks would have testified that he made such a trade with Dunivan subsequent to the alleged trade between Dunivan and Albright, such testimony would have had a tendency to discredit the evidence of plaintiff as to the prior trade; and we do not think that the prejudicial error is removed by the fact that the bill of exceptions shows that Nicks would have testified that this contract between Nicks and plaintiff occurred the latter part of September, 1913, while the testimony of Nicks shows that he did not become manager until November of that year. This discrepancy as to date would affect rather the weight of the evidence than the admissibility thereof. It is probable by cross-examination, or by having his attention called to the apparent discrepancy, the same would have been removed or reconciled. The assignment is sustained.

There are various other assignments presented in appellant's brief, but we do not feel that any good purpose can be advanced by their consideration, since under our view hereinabove expressed, the judgment of the trial court must be reversed and the cause remanded, and the questions raised in the assignment not discussed will not likely occur on another trial.

The judgment is reversed, and the cause remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes