CITY OF FT. WORTH v. BURTON.
(No. 8497.)

(Court of Civil Appeals of Texas. Ft. Worth.
Jan. 6, 1917. On Motion for Rehear-
ing, Feb. 24, 1917.)

1. APPEAL AND ERROR ⬦750(1)—OBJECTIONS
—MULTIFARIOUSNESS.

In an action against a city for compensation
for the flooding of lands, an assignment of error
complaining of a remark of the court in the pres-
ence of the jury, while defendant's witness who
was a member of a real estate exchange was on
the stand, that he did not intend to have the
whole real estate exchange swear in the case, is
not open to objections on the ground of multifar-
iousness.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 3074, 3075, 3082, 3083.]

2. TRIAL ⬦29(2) — CONDUCT OF TRIAL—RE-
MARKS OF COURT.

In an action against a city for the flooding
of lands, where the city admitted its liability
for damages, but questioned the amount of the
claim, the court while a real estate man was tes-
tifying, stated that he did not intend to have
the whole real estate exchange testify in the
case, and subsequently remarked to plaintiff,
who had testified as to the value of the submerg-
ed land which had been sown to alfalfa, that
there was not much difference between an alfalfa
farm and a gold mine. The court also on his
own motion questioned a witness as to why he
stated the remainder of plaintiff's lands were
enhanced in value by reason of the creation of
the water reservoir when he stated he would
prefer them before the construction of the res-
ervoir. Held that, as the only issue in the case
was that of damages, the first remark by the
court that he did not intend to have the whole
real estate exchange testify must, in view of
other remarks, be deemed prejudicial.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 81.]

3. EMINENT DOMAIN ⬦303 — INJURIES TO
LAND—MEASURE.

In case of injury to or appropriation of
lands, the measure of the landowner's damages
is the diminution of its market value for any
lawful purpose to which he might have elected
to put it, and to which it might be put at the
time of the injury or appropriation.

[Ed. Note.—For other cases, see Eminent Do-
main, Cent. Dig. §§ 815–817.]

4. TRIAL ⬦194(20)—INSTRUCTION.

In an action for damages for the flooding of
plaintiff's land, where witnesses had given their
opinion as to the value of the submerged prem-
ises, in view of the establishment of a stand
of alfalfa thereon and the installation of an ir-
rigation plant, a charge that the jury in consid-
ering damages should take those particular
elements into consideration is erroneous as on
the weight of the evidence.

5. EVIDENCE ⬦553(1)—EXPERT TESTIMONY—
HYPOTHETICAL QUESTIONS.

A hypothetical question having basis in the
evidence of the party propounding it is warrant-
ed, though it disregards the evidence of the ad-
versary party.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2369, 2372, 2374.]

6. EVIDENCE ⬦474(18)—OPINION EVIDENCE
—EXPERT TESTIMONY.

A witness having testified that the value
of lands in the vicinity was ascertained by the
revenue produced, and who was conversant with
the crops raised on a particular piece of land, is
competent to testify as to the value of such land,

though he did not know of any land of that
kind being sold in the vicinity.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 2217.]

On Motion for Rehearing.

7. APPEAL AND ERROR ⬦722(1) — ASSIGN-
MENTS OF ERROR—STATUTE.

Statutes and rules as to the form and suffi-
ciency of assignments of error should be liber-
ally construed so as not to cut off the approach
of parties in good faith seeking relief for preju-
dicial errors.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 2990, 2994–2996.]

8. APPEAL AND ERROR ⬦662(3) — ASSIGN-
MENTS OF ERROR—SUFFICIENCY.

In view of Rev. St. 1911, art. 1612, as
amended by Acts 33d Leg. c. 136, declaring that
an assignment shall be sufficient which directs
the attention of the court to the error com-
plained of, an assignment of error complaining
of a remark made in the presence of the jury
while a witness for defendant was on the stand,
based on a bill of exceptions reciting that at the
conclusion of the testimony of a witness the
court asked defendant's attorney how many more
witnesses he had on the same lines, and the at-
torney stated he did not know, whereupon the
court directed a recess for five minutes to deter-
mine that question, is not open to attack on the
ground that the bill of exceptions was not suffi-
cient to show that the remarks were made in
the presence of the jury.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 2852.]

9. APPEAL AND ERROR ⬦1046(5)—HARMLESS
ERROR—REMITTITUR.

In an action for damages for flooding lands,
where the verdict was large, and the court made
improper remarks before the jury, the error can-
not be disregarded on the ground that it affected
only the question of excessiveness of the verdict,
and that the Court of Civil Appeals did not de-
termine the amount of the excess.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4134.]

Appeal from District Court, Tarrant Coun-
ty; Ben M. Terrell, Judge.

Action by J. W. Burton against the City of
Ft. Worth. From a judgment for plaintiff, de-
fendant appeals. Reversed and remanded.

T. A. Altman, B. L. Agerton, and A. B.
Curtis, all of Ft. Worth, for appellant. Slay
& Simon, Capps, Cantey, Hanger & Short,
and Lattimore, Cummings, Doyle & Bouldin,
all of Ft. Worth, for appellee.

BUCK, J. This suit was instituted by ap-
pellee, J. W. Burton, for the recovery of
damages from appellant, the city of Ft.
Worth, on account of the overflow and sub-
merging of a portion of appellee's lands ly-
ing contiguous to the West fork of the Trini-
ty river, caused by the construction of a dam
across said river about two miles south of
appellee's said lands. Said dam was erected
for the purpose of constructing a resevior,
known as Lake Worth, and it was alleged by
plaintiff that, by reason thereof, the water
which had previously drained away from ap-
pellee's said lands was caused to back up on,
and remain and stand on, about 209 acres of
the tillable portions of said land, and that

thereby said portions of said land were permanently appropriated by appellant. Appellee alleged that the water standing on his cultivated land during the warm season of the year became stagnant and afforded a breeding ground for mosquitoes, which during the greater portion of the year rendered appellee's home and premises to his family and stock well-nigh uninhabitable, and that by reason thereof, and by reason of the fact that appellee's valley, or farming, land had been appropriated by appellant, the remaining portion of his land, mostly upland, consisting of 261.8 acres, had been depreciated in value. Appellee further alleged that his 470.8 acres were situated approximately 9½ to 10½ miles from the city of Ft. Worth; that most of said 209 acres had been sodded in alfalfa, and alfalfa was growing on the same at the time of the alleged overflow, which it was alleged occurred during August, 1914. He alleged that the tillable land on said place was of the reasonable market value of $300 per acre, and that the nontillable land, when taken in connection with the tillable land, was of the reasonable market value of $50 per acre, and that the market value of said tillable land so submerged had been totally destroyed, and that the market value of said uplands had been diminished in the sum of $15,000, and that the crop growing upon said tillable land for the year 1914 was of the reasonable value of $5,000; that the improvements on said place were of the reasonable market value of $7,000; and that an irrigation plant which had been installed was of the reasonable market value of $2,500. Damages were sought in the total sum of $62,700.

Appellant admitted that it had constructed a dam and reservoir such as described in appellee's petition, and that in the construction of the same it had become necessary to take about 209 acres of appellee's said lands, and that said portion of said land was, and would be, covered with water impounded by said dam. Appellant averred its willingness to pay appellee the reasonable value of said land so appropriated, but denied that the uplands belonging to appellee had been damaged by the overflow of appellee's bottom lands, and alleged, on the contrary, that the value of said uplands had been increased by the construction of said reservoir. It alleged that the reasonable market value of said cultivated lands was not more than $35 per acre, and that the reasonable market value of appellee's nontillable lands, considered separately from the tillable lands, did not exceed $15 per acre. Hence, liability having been admitted by appellant, the controlling issue is as to the amount of damages to which appellee is entitled.

On October 23, 1915, the cause having been submitted to a jury under a general charge, a verdict was returned for plaintiff in the sum of $34,903 for the 209 acres of land appropriated by appellant, and $1,305 for the depreciation of the upland of 261.8 acres,

making a total of $36,208, with interest. From a judgment for plaintiff in said total amount, the defendant appeals.

The record in this case is quite voluminous, the transcript consisting of some 111 pages, and the statement of facts of 263 pages, and in order to consider intelligently the questions raised under appellant's ten assignments it has been necessary for us to devote considerable time and labor in reading this lengthy recital of the evidence. Much testimony was introduced pro and con as to the value of the 209 acres, and the evidence upon this item presents a wide range. Some of plaintiff's witnesses testified that the market value of said 209 acres was $400 an acre, while some of defendant's witnesses fixed the value at an amount as low as $35 an acre. Perhaps the controlling issue entering into the question of market value was the acreage out of said 209 acres which had prior to the overflow been successfully sodded with alfalfa, the plaintiff claiming that some 163 acres had been so sodded, and the defendant claiming that only about 3 acres had been successfully sodded. Much of the testimony, and especially on the part of plaintiff, upon this point was in the nature of expert evidence, elicited in response to hypothetical questions, and hence its probative value depends largely on the quantum and nature of the evidence introduced by plaintiff and defendant, respectively, as to whether the 209 acres had been proven peculiarly adapted to the growing of alfalfa, by reason of the nature of the soil, climatic conditions, and the adaptability of the land to irrigation. Plaintiff had prior to the overflow installed an engine and pump to raise water from the Trinity river, and had constructed a flume and irrigation ditches or canals for the purpose of distributing the water over the land sought to be planted in alfalfa.

[1, 2] Appellant's third assignment is as follows:

"The court erred in making remarks in the presence of the jury while P. W. Hunt, a witness for defendant, was on the stand to the effect that he did not intend to have the whole real estate exchange of Ft. Worth swearing in this case, neither to have everybody in Ft. Worth swearing in it, because said remarks were highly prejudicial to defendant, calculated to prejudice the jury against defendant, and creating the impression that defendant was unduly consuming the time of the court and jury, and tending to impress upon the jury that the court did not in fact believe witnesses introduced by defendant, as further appears in defendant's bill of exception No. 20, filed herein and made a part hereof."

This assignment is predicated upon defendant's bill of exception No. 20, from which it appears that at the conclusion of the testimony of the witness P. W. Hunt, shown to be a real estate dealer in the city of Ft. Worth, and a witness introduced by defendant on the question of real estate values, the court said:

"Mr. Curtis, how many more of these witnesses have you got on the same line?"

"Mr. Curtis: I do not know.

"The Court: I want to know; I don't intend to have the whole real estate exchange of Ft. Worth swearing in this case.

"Mr. Curtis: I except to the remark.

"The Court: You can have your exception; I am going to give you reasonable time. Let me know how many more of these witnesses you want—

"Mr. Curtis: If you will give me a little time—

"The Court: Because I am not going to have everybody in Ft. Worth swearing in this case.

"Mr. Curtis: I except to that remark also.

"The Court: We will have a recess for five minutes. I want to know just how many you are going to have by the time we resume."

While W. L. Sargent, witness for the plaintiff, was testifying, and after he had testified that in his opinion the market value of the bottom land, embracing in part the 163 acres claimed by plaintiff to be well sodded in alfalfa, was of the reasonable market value of $400, and after he had been examined at length by counsel for each side, the court asked him:

"There is not much difference between your alfalfa farm and a gold mine, is there?"

To which witness answered:

"I would rather have the alfalfa farm than a good many of the gold mines."

Defendant excepted to this remark, and the court replied as follows:

"I just wanted to know; I was not making any remark; I was asking the witness for information."

The alleged prejudicial error in the remarks of the court is presented in appellant's first assignment of error.

While R. L. McMurray, witness for defendant, was testifying, and after he had stated his experience in the real estate business, and his acquaintance with the Burton tract of land, and that in his opinion the bottom land was of the reasonable market value of $75 per acre, and that the upland was prior to the overflow of the reasonable market value of $20 per acre, and that its value had been enhanced by reason of the presence of the body of water resulting from the overflow, and after he had testified that personally he would rather not have the upland in its present condition with the water there than the upland before the water was there to live on himself, the court said:

"If you would not want to live there, why would anybody else want to?"

Witness answered:

"I cannot answer that question; lots of people want to do things I don't.

"Mr. Curtis: I object to the question of the court.

"The Court: I just wanted to know.

"Mr. Curtis: I do not think it is proper.

"The Court: He said the market value increased. I do not want to do anything that is wrong at all.

"Mr. Curtis: I think it is, and I except.

"The Court: I want to ask a question. The court wants to be informed as well as the jury on this question of increasing the market value with reference to the reservoir. You testified that the market value was increased how much per acre?

"Answer: Five to ten dollars an acre.

"Question: Now, you said in answer to the question that was propounded to you that you would not want to make it a residence or live there at all like it is. The court wants to know and wants to ask this question: What makes the increase of market value—does somebody else want to buy it for some other purpose?

"Answer: Well, I cannot answer that question, only I know men are inquiring continually for that land up around the lake and wanting to buy it. What their object is I cannot tell."

These three assignments present kindred questions, and are grouped by appellant for discussion. We have come to the conclusion that the third assignment presents prejudicial error, especially taken in connection with the proceedings set out under the first and second assignments. While appellee objects to the consideration of all three assignments on several grounds mentioned, among others multifariousness, we are of the opinion that, at least as to the third assignment, none of the objections should be sustained.

We think it was improper for the court to make the remark:

"I don't intend to have the whole real estate exchange of Ft. Worth swearing in this case."

We think said remark was reasonably calculated to, and probably did, cause the jury to believe that the court did not attach any importance to the testimony of defendant's witnesses who were real estate agents, and that, in the opinion of the court such testimony was of little probative value. Even though it should be said that a trial court has the authority, in the exercise of a reasonable judicial discretion, to limit the number of witnesses upon any particular issue, yet, if so, he should exercise his authority without the use of language tending to disclose any existing or apparent opinion held by the court as to the weight of the evidence theretofore given or sought to be introduced; and where the remarks of the court are sufficient to indicate an opinion held by him as to the probative effect of such testimony, and especially in a case where the issue was sharply contested, as in this, and where the verdict to be rendered could reasonably take a wide range, according to whether the jury believed the testimony of the witnesess for the plaintiff or for the defendant, we think such action by the court presents reversible error. Gorman v. Brazelton, 168 S. W. 434; G., C. & S. F. Ry. Co. v. Loyd, 175 S. W. 721; St. L. & S. F. Ry. Co. v. Lane, 49 Tex. Civ. App. 541, 110 S. W. 530; T. & L. Lbr. Co. v. Rose, 103 S. W. 444.

[3, 4] In its fifth specification of error the appellant complains of the third paragraph of the court's main charge, which reads as follows:

"If you find and believe from the evidence that at the time of the flooding of said 209 acres of land plaintiff, J. W. Burton, had growing upon a part thereof a crop of alfalfa, and if you further find from the evidence that plaintiff had installed an irrigation plant thereon and had made preparations to irrigate said land, then you may consider such facts, if any, in determining the reasonable market value, if any, of said 209 acres of land, if you find and believe

from the evidence that the market value, if any there is, is affected thereby."

This paragraph was objected to in the trial court, and is assailed here, on the ground that it is a charge upon the weight of the evidence and places undue emphasis on certain isolated facts in evidence, and further because under the evidence, it is claimed, the value of the irrigation plant, if any, and the value of the alfalfa that was on the land at the time the land was flooded, were considered by all the witnesses in estimating the market value of the land at the time of such flooding, and further because the court did not give in connection with this charge the instruction that if the plaintiff, by the exercise of ordinary care, after he knew or could have known that his land would be flooded, could have removed the engine from its location, and thereby saved it, and failed to do so, he would not be entitled to recover for the value of said engine.

It is generally true that in a suit to recover damages for injury to, or appropriation of, land, the measure of damages is the diminution of its market value for any lawful purpose to which the owner might elect to put it, and to which it might be subjected at the time of the injury or appropriation. Railway Co. v. Wallace, 74 Tex. 581, 12 S. W. 227; F. W. & D. C. Ry. Co. v. Hogsett, 67 Tex. 685, 687, 4 S. W. 365; Gas & Electric Co. v. Belden, 103 Tex. 59, 63, 123 S. W. 119, 27 L. R. A. (N. S.) 237; Railway Co. v. Anderson, 173 S. W. 908. Therefore it was proper for the jury to consider upon the question of the market value of the land in controversy and the amount of damages to which plaintiff was entitled the state of cultivation of the land, the improvements thereon, the uses to which it might be put, etc., but we think it was improper for the court to select two circumstances entering into the question of valuation and to charge the jury specifically that they might consider these items in determining the market value of the bottom land. With equal propriety the court might have charged that, if the plaintiff had made one or more unsuccessful efforts to sod this bottom land with alfalfa, which the evidence seems to establish, they might consider such failures in determining the availability of such land for raising alfalfa, and therefore the market value of the land. The fact that plaintiff had a crop of alfalfa on the land at the time of the flooding, and the fact that prior thereto he had installed an irrigation plant thereon and had made preparations to irrigate the land for the purpose of raising alfalfa, were facts and conditions included in the hypothetical questions propounded to the expert witnesses who testified in plaintiff's behalf in this case, and we think it was not proper that these two elements of damages should be singled out by the court in his charge. Railway Co. v. Kutac, 76 Tex. 473, 478, 13 S. W. 327; Dupree v. T. & P. Ry. Co., 96 S. W. 647.

It is urged by appellee in his counter proposition to this assignment that because of the fact that the appellant requested its special charge No. 2 in effect, instructing the jury that they could not consider, as having a value separate and apart from the land itself, the crop of alfalfa growing on said land, but only might consider it as an element affecting the market value of said land, the appellant is in no position to complain of the giving of the instructions contained in said third paragraph of the court's main charge. But, as the judgment must be reversed for reasons heretofore given, we do not find it necessary to discuss this answer of appellee, in the nature of a confession and avoidance, but suggest that upon another trial the error pointed out be avoided.

[5] Under its sixth and seventh assignments appellant complains that the hypothetical question propounded to appellee's witness F. B. Parker did not contain all the material elements that were in testimony regarding appellee's land, because the evidence showed that it was not a good set of alfalfa, and was not in irrigation, etc.; the question being predicated upon an assumed state of facts that it was alfalfa land subject to irrigation, with an irrigating plant on it, of class A, silt soil, etc. We are inclined to think that there is no error presented in the ruling of the court in permitting the witness to answer the hypothetical question propounded. While a hypothetical question should not include facts not in evidence, yet such a question may be predicated upon the state of facts established by the proponent's evidence, and in order to make the question admissible it is not necessary to include the contrary facts which the adversary's testimony would tend to establish. It is only sufficient that there is evidence tending to prove the supposed facts constituting the basis of the hypothetical question asked. Railway Co. v. Compton, 75 Tex. 667, 673, 13 S. W. 667; Collins v. Chipman, 95 S. W. 666. If the opposite party desires to elicit the opinion of the expert witness upon a state of facts which he claims other evidence introduced tends to establish, he may do so under cross-examination, and by propounding the hypothetical question, including such facts as have been omitted, and which the evidence tends to establish.

[6] The eighth assignment is directed to the admission of the testimony of L. L. Burton, son of plaintiff, upon the issue of the market value of the land on the ground that the witness did not show himself qualified. Upon cross-examination the witness testified that he did not know of any land of that kind being sold in that vicinity; in fact, there was not any land of that kind in that section; that he reached his conclusion as to the market value of the land by the amount the land had actually produced and would produce. A number of witnesses for

plaintiff had testified that the market value of farm lands was generally based on the annual revenue derived therefrom; such revenue being accepted as ten per cent. of the value of the land. The witness Burton could properly testify as to the annual income from the land in question, and of land of like kind and condition, and if he knew of his own knowledge that the market value of lands generally in that vicinity was based on the revenue derived therefrom, we are of the opinion that he could properly testify as to such market value. But, on the other hand, we are of the opinion that it would not constitute expert testimony for a witness with actual knowledge of the productive value of land, but with no independent knowledge as to the reasonable market value thereof, to state that by reason of the land producing annually so much, and by reason of the testimony of expert witnesses to the effect that the market value of lands generally was based on the yearly productiveness, therefore the land in question was of the reasonable market value of so much. Such a process of reasoning would not qualify the witness to testify as an expert, but would be rather an argument and conclusion of the witness, and a conclusion based on such facts and circumstances would be one for the jury rather than for the witness to draw.

For the reasons given, the judgment of the trial court is hereby reversed, and the cause remanded.

### On Motion for Rehearing.

Appellee urges that we erred in our original opinion in sustaining appellant's third assignment: (1) Because appellant's bill of exceptions does not affirmatively show that the remarks of the court of which complaint is made were uttered in the presence and hearing of the jury; and (2) because this error, if any, could only affect the question of the excessiveness of the verdict, and that this court failed to affirmatively hold the verdict to be excessive.

[7, 8] In support of the first proposition the case of Waggoner v. Dodson, 96 Tex. 6, 68 S. W. 813, 69 S. W. 993, and many other cases are cited. It is true that in Waggoner v. Dodson the Supreme Court did intimate, without holding, that Chief Justice Conner, of this court, was correct in declaring the rule to be:

"That a party desiring to present for revision a ruling of the character involved in this case must do so by bill of exception which in terms is so specific as to point out the precise error intended to be relied upon, and that it should state the facts so as to exclude any reasonable conclusions of fact other than those stated upon which the decision could be maintained."

The opinions in all the cases cited by appellee were rendered prior to the amendment of article 1612, Revised Civil Statutes 1911, in 1913 (Acts 33d Leg. c. 136), by which were added:

"But an assignment shall be sufficient which directs the attention of the court to the error complained of."

While the former strictness as to form has been somewhat relaxed by reason of this above amendment, yet we understand the rule still to be that in order for an assignment to be held sufficient it must point out the specific error of which complaint is made. West Texas Supply Co. v. Dunivan, 182 S. W. 425; Wardlow v. Andrews, 180 S. W. 1161. Statutes and rules as to the form and sufficiency of assignments should be liberally construed, so as not to cut off the approach of parties in good faith seeking relief for errors prejudicial to them in the trial of the case. Land Co. v. McClelland Bros., 86 Tex. 190, 23 S. W. 1103, 22 L. R. A. 105; Orange Lumber Co. v. Ellis, 153 S. W. 1180; ·Rice v. Dewberry (Sup.) 93 S. W. 721. The bill of exceptions upon which the third assignment is based, while it does not say in so many words, makes it apparent that the remarks of the court objected to were uttered in the presence and hearing of the jury. If any doubt as to this conclusion could arise by reason of the failure to so state in so many words, it is removed by the supplemental charge, which instructed the jury to disregard such remarks. Hence we conclude that appellee's first contention must be overruled.

[9] The second point raised was decided by the majority of the court, adversely to appellee's contention in T. & P. Ry. Co. v. Rasmussen, 181 S. W. 212, 218, and for the reasons there given the second contention cannot be sustained. As in the Rasmussen Case, we do not pass upon the question of the excessiveness vel non of the verdict, but only hold that the remarks of the court were of a nature to and probably did increase the verdict beyond the amount which the jury would otherwise have found.

It is further urged that we erred in sustaining the fifth assignment; that a different rule obtains in condemnation proceedings from the one applicable to other suits as to the duty of the court in charging upon the different elements of damages. Appellee cites us to the following cases, to wit: Crystal City & U. R. Co. v. Boothe, 126 S. W. 700; B. & G. N. Ry. Co. v. Elliott, 148 S. W. 1125; City of El Paso v. Coffin, 40 Tex. Civ. App. 54, 88 S. W. 502; Wichita Falls & W. Ry. Co. v. Wyrick, 147 S. W. 730—to sustain his contention that the charge complained of was proper and was not on the weight of the evidence. We have read each of these cases, and believe that each is distinguishable from this case; but, if not, we are not prepared to follow a Court of Appeals decision which would hold that the court was required or authorized to instruct the jury that, in passing upon the market value of the land injured or appropriated, they should consider certain mentioned elements of value, such as partic-

ular improvements, its adaptability to the raising of certain crops, its location with reference to market or to business, etc., which elements of value in the introduction of the testimony were included in the hypothetical questions propounded to the witnesses used as experts on the question of value, and which were evidently considered by such witnesses in determining the market value of the land, and entered into their expressed opinion as to such market value. It is true that in suits involving the injury to land, or the appropriation thereof, it is proper for the court to charge the jury that it is the right of the owner to have his damage measured by the extent of the injury to the land used for any lawful purpose to which he had appropriated it, desired to appropriate it, or to have it adapted (St. L. S. W. Ry. Co. v. Anderson, 173 S. W. 908); yet we do not think under this rule the court would be justified in selecting certain elements of value which have already been considered by the witnesses upon value in determining their opinion, and call the attention of the jury particularly to these elements. Such an instruction involves rather an element of value than one of damage. In a case like this, where there was an entire appropriation of the land, the measure of damages would be the reasonable market value of the land, all things considered, at the time of such appropriation. In the charge objected to the court in effect, singled out certain bits of evidence tending to establish certain elements of value and specifically instructed the jury that they might consider such elements in determining the market value of the land. We still hold that the charge as given was on the weight of the evidence.

The motion for rehearing is overruled.