WEST TEXAS SUPPLY CO. v. DUNIVAN.
(No. 743.)

(Court of Civil Appeals of Texas. El Paso. Oct. 18, 1917. Rehearing Denied Nov. 15, 1917.)

1. CORPORATIONS &376—PURCHASE OF STOCK —CONSENT OF DIRECTORS.

A corporation when authorized by its directors may repurchase its own stock by consent of its stockholders.

2. CORPORATIONS &432(12) — REPRESENTATION BY OFFICER—CONTRACTS—EVIDENCE.

In an action for conversion of a set of tinner's tools which plaintiff claimed to have acquired from defendant corporation under a contract whereby he was to deliver to defendant shares of stock, where there was no evidence of any act of the directors authorizing the trade, or that the vice president who made the trade had been permitted to do similar acts, there could be no recovery.

Appeal from Knox County Court; W. M. Moore, Judge.

Action by J. T. Dunivan against the West Texas Supply Company. Judgment for plaintiff, and defendant appeals. Affirmed in part, and reversed in part and rendered.

Jas. A. Stephens, of Benjamin, for appellant. Brookreson & Howell, of Benjamin, for appellee.

HARPER, C. J. Appellee sued appellant for the conversion of a set of tinner's tools, and for $25 for services rendered. Appellant's answer consists of demurrers, general denial, special denials of certain paragraphs of plaintiff's petition, and that it was the owner of the tools in question. We refer to opinion of Court of Civil Appeals, Ft. Worth, Texas, 182 S. W. 425, for a more extensive statement of the case. The case was submitted to jury by special issues, and upon the verdict judgment was rendered for plaintiff (below) for $994.50, from which this appeal is prosecuted.

By its brief appellant urges eight assignments of error, and appellee objects to a consideration of them upon several grounds, such as not being in compliance with the rules, being multifarious, etc. We think them sufficient to permit their consideration. These assignments are all attacks upon the findings of the jury upon the special issues submitted. We, having decided that the following is conclusive of the merits of the cause, will confine the opinion to the one question.

The controlling issue in this case is: Did the West Texas Supply Company sell the tools in question to Dunivan? Special issue A complained of reads:

"Had the board of directors of the West Texas Supply Company of Benjamin, Tex., prior to the 1st day of September, 1913, by its customs, acts, and conduct, delegated authority to its president, W. F. Finn, to make or cause to be made the trade in controversy?"

The fifth assignment attacks the finding of the jury in response to special issue A, given at the request of plaintiff. The propositions are: (1) That there is no evidence that the directors authorized the trade; and (2) that they expressly repudiated or rescinded the attempted act of the vice president and manager before the consideration passed.

[1] In Texas a corporation may repurchase its own stock with the consent of its stockholders (San Antonio Hardware Co. v. Sanger, 151 S. W. 1104); but in all cases it must be authorized by the directors of the corporation (section 4075, Thompson on Corporations [2d Ed.]). There is no evidence that the sale was made by Finn.

The testimony of John Albright, vice president and general manager, is undisputed. He said:

"I was vice president and general manager of the West Texas Supply Company of Benjamin, Tex., from its organization until November 1, 1913. I still own my stock in the company.

About the 1st of September, 1913, Mr. W. T. Finn, president of the company, was at the store in Benjamin and had a talk with me, and said that the expenses were too heavy, and they were too heavy. He told me to discharge Mr. Dunivan. Mr. Dunivan was working for the company at that time, and I told Mr. Finn that I had hired Dunivan for a year, and that his time would not be out for some time yet, and that I could not discharge him under our agreement. We discussed the matter, and Mr. Finn asked me if I could trade Dunivan out some way to stop his wages, and I told him that I could trade him the tin shop for his stock as far as it went. He was fixing to leave for home, and told me to see Dunivan and let him know what I could do. I told him that I had already talked to Dunivan about it, and that he would trade. Mr. Finn then told me to go ahead and make the trade, and left, and I saw Dunivan and made the trade just like he told me to do. Dunivan agreed to take the tools and materials then on hand at their invoice price, and let the company take enough of his stock at its face value to cover the amount; he had one certificate of $500. I told him we would take this up and issue stock back to him for what he had left. He said he would go and get the stock, and we could fix it up. I told him, 'No'; to wait until Mr. Finn came back to make the transfer of the stock, as at that time we had no secretary. Bob Gray, who was secretary, having sold his stock and retired from the company, it was necessary to have two of the officers of the company to make the transfer, and I was the only one at Benjamin. So we went ahead and invoiced out the stock, and it amounted to just a fraction less than $400, and I turned it over to him, and we closed up the trade. This trade was made the 1st day of September, 1913; the goods invoiced out on the 2d day of September, 1913. I stayed with the company as its manager until November 1, 1913, and Mr. Finn never made any kick about it while I was there, and I never heard of any from any one else while I was running the store. * * * The directors at the time the trade was made with Dunivan were myself, W. T. Finn, and W. T. Ward. During the entire time I was vice president and manager of the company there was never a meeting of the directors after the one of organization, and I never heard of such a meeting while I was running the store. I was not directed by the board of directors to make the trade with Dunivan; I made it by instructions from Mr. Finn. Dunivan was to run the tin shop in the back of the warehouse, and agreed to help me occasionally on little jobs for the rent, and Mr. Finn told me to arrange it that way, and the company was to pay him for work he did where it took much time. Dunivan did not bring and tender me the stock certificate at any time, but offered to go and get it, but I told him not to do it just then as the books could be fixed on that point when Mr. Finn came up, as it took two officers to transfer the stock, and our Secretary Bob Gray had retired from the company, and I was the only proper officer to do this in Benjamin. * * * I never made a trade like this for the company before, and I don't know that I ever heard of a corporation trading for its stock before."

[2] Each of the other directors testified that he had not authorized Albright to make the trade. The evidence is conclusive that no meeting was held where such a resolution could have been passed by the directors, and no evidence of any such was offered, and there is no evidence of any act of the directors which authorized Albright as agent

to make the trade, and none that he (Albright) had been permitted to do similar acts in such way as to mislead the appellee to believe that he had such authority. We are therefore of the opinion that the sale was not lawfully made. It follows, therefore, that appellee never became the owner of the tools in question so as to charge the appellant corporation with their conversion. And it appearing that the evidence was fully developed, it devolves upon this court to here render the judgment that should have been rendered below.

Jury having found that the appellant owed appellee $19 for services rendered to it, to that extent the judgment of the trial court is affirmed, and as to the balance of the $994.-50 is rendered for appellant.